## WILFUL AND WANTON NEGLIGENCE.

Court of Appeals for Champaign County.

NYPANO RAILROAD COMPANY AND ERIE RAILROAD COMPANY v.
LEROY L. BLOSE AND HENRY HEATER, ADMINISTRATORS
OF THE ESTATE OF AUGUSTUS MAUCK, DECEASED.*

Decided, February 26, 1914.

*Carriage Struck by Train at Street Crossing—Reckless and Wanton Negligence Charged Against Railway Company—Doctrine of Last Clear Chance Not Applicable, When—Weight of Evidence.*

In an action growing out of the striking of a vehicle by a steam railway train, running forty miles an hour over a street crossing within municipal limits, where the view of the track to the occupants of the vehicle was obscured by a string of freight cars, and when the street is also in part obstructed by cars standing thereon a jury is justified in finding that the train was being operated in such a manner as to amount to wilful and wanton negligence.

*I. T. Siddall* and *S. S. Deaton,* for plaintiffs in error.
*L. D. Johnson* and *Buroker & Zimmer,* contra.

KUNKLE, J.; ALLREAD, J., and FERNEDING, J., concur.

The court of common pleas upon the original trial of this case directed the jury to return a verdict in favor of plaintiffs in error.

Error was prosecuted from such judgment to the circuit court, which court, in an opinion delivered by Judge Sullivan, held that the case should have been submitted to a jury for its consideration and such court reversed the judgment of the common pleas court.

The judgment of the circuit court was affirmed by the Supreme Court without opinion and the cause was remanded to the common pleas court for re-trial.

The case was re-tried and submitted to a jury in the common pleas court in December, 1912.

*Writ of *certiorari* denied by the Supreme Court, February 10, 1914

The jury rendered a verdict in favor of defendants in error for $4,000. Motion for a new trial having been overruled, error is prosecuted to this court.

Since the case was heard in the circuit court, the petition has been amended by adding an additional ground of negligence, viz: "that the defendants further obstructed said Bloomfield avenue, on the south side thereof, by cars standing out on the avenue so that the full use of said avenue was obstructed and there was less room to pass through between the cars than there should have been."

Counsel have favored the court with unusually exhaustive briefs in this case. These briefs have been submitted to opposing counsel. We have considered the arguments contained therein, and have examined the authorities cited therein, but shall not attempt to discuss or review the same in detail.

Plaintiffs in error claim that the evidence does not establish any negligence in the respects claimed in the petition and that the verdict is manifestly against the weight of the evidence and is contrary to law.

There was a conflict in the evidence as to whether the whistle upon this engine was blown or the bell thereon rung, as the train was approaching this crossing. There was also a conflict in the evidence as to the rate of speed at which this train was running when it approached and crossed Bloomfield avenue.

It is sufficient for the purposes of this decision to state that the above were questions of fact, which were required to be and were properly submitted to the jury. The record shows that the jury was fully instructed by the trial court as to the rules by which such testimony should be weighed. The charge upon this subject concluded with the following statement:

"In such cases the question is purely for the jury, and the jury must determine it from a consideration of all the facts and circumstances in the evidence."

We think the manifest weight of the evidence shows that this train approached and passed over this crossing at practically forty miles an hour. Bloomfield avenue is a public street in the outskirts of the city of Urbana. While this crossing

was not used to as great an extent as many other street crossings in that portion of the said city, yet the evidence discloses that this crossing was used by travelers to a considerable extent. We think the jury was justified in finding that the plaintiffs in error were guilty of negligence in passing over this crossing at the rate of speed at which it was crossed.

A number of witnesses testified as to whether the whistle on this engine was blown and whether the bell upon this engine was rung as the train approached said crossing. Some testified that the whistle was not so blown and that the bell was not so rung. A portion of the witnesses so testifying appear to have been in a position where they could have heard the same had the bell been rung or the whistle blown. Other witnesses called by the plaintiffs below stated that they did not hear the bell ring or the whistle blow, and the inference claimed from such testimony was that if the bell had been rung or the whistle had been sounded, these persons could and would have heard the same.

The defendants below called a number of witnesses who testified that the whistle was blown and the bell was rung for this crossing. As above suggested, these were questions of fact to be determined by the jury. If the jury believed the witnesses called by the defendants in error upon these questions of fact, then there was ample evidence to support a finding that the bell was not rung nor the whistle sounded at the time in question.

It also appears from the record that the plaintiffs in error at the time in question obstructed this crossing by standing freight cars thereon, so that the width of the crossing was thereby reduced to a width of about thirty feet, instead of being sixty feet, the width of the said avenue.

It appears from the testimony of Lawrence Zimmerman, who was the only eye-witness to this accident, that he saw Mr. Mauck driving through this opening in the cut of cars which plaintiffs in error had left standing in part upon Bloomfield avenue. He says that Mr. Mauck was trying to pull his horse to the south and the car standing on Bloomfield avenue to the south prevented his so doing. The record shows that the carriage in

which these people were riding was thrown against and under the car so standing on the south side of Bloomfield avenue, and that by reason thereof Mr. and Mrs. Mauck were killed and their daughter seriously injured. If this car had not been so unlawfully placed on Bloomfield avenue, the accident in question might have been avoided.

Mr. Zimmerman testified in part as follows:

"Q. Now, just tell the jury what happened after you first saw Mauck with his horse coming through that opening? A. Just as I saw him coming through the cut, the train hit him just as I saw him.

"Q. What was he doing? A. Pulling on the lines.

"Q. What direction was he pulling? A. South.

"Q. Do you know any reason why, when he pulled south, that he didn't get out of the way of the train?

"Objected to. Objection sustained.

"Q. When you saw him pulling—on the left, you say? A. Yes.

"Q. What was the condition there? A. Those cars stopped him.

"Q. What cars? A. The south range of cars.

"Q. Stopped him from what? A. Turning his horse around.

"Q. Now, when you saw the horse coming, was it trotting or walking? A. Walking."

The petition also charges that the defendants below "carelessly, recklessly and wantonly caused said locomotive to strike, wound and kill the said Augustus Mauck."

This branch of the case presents a very interesting question. In order that we may avoid any confusion as to the issues, it will not be amiss to again repeat that the petition charges that the defendants "carelessly, recklessly and wantonly caused the death of the said Mauck." What is known as the doctrine of the "last clear chance" is not plead in the petition and is not relied upon by counsel for defendants in error. Some of the authorities cited by counsel for plaintiffs in error relate to this doctrine. A portion of their oral argument was also devoted to showing that there can be no recovery, as it was conceded that the agents of the railroad company in charge of this train did not know of the peril of Mr. Mauck before he was injured, and it

is claimed there can be no liability, as there was no testimony showing or tending to show that the agents of the railroad company could have avoided the accident after they learned of Mr. Mauck's peril.

If the defendants in error had relied for recovery upon the doctrine known as the "last clear chance," then before they could recover, it would have been incumbent upon them to show that the agents of the railroad company in charge of this train knew of the peril of Mr. Mauck and after having acquired such knowledge could by the exercise of ordinary care have avoided injuring him. As above stated, however, this doctrine is neither plead nor relied upon.

In addition to the acts of negligence above specifically referred to, the defendants in error also claimed that the railroad company obstructed Mr. Mauck's view of this train by the cars which were placed on another track—that Mr. Mauck's view was completely obstructed by such cars so placed by the railroad company.

We are satisfied from an examination of the record that the plaintiffs in error by this act materially obstructed Mr. Mauck's view of this approaching train.

In 76th Ohio State Reports, 176, our Supreme Court says:

"The rule upon the subject has been correctly stated to be that 'where the surroundings are such as to render a crossing particularly dangerous, it is the duty of the company to exercise care commensurate with the danger and especially if the company has created unusual danger at or near a crossing, it must meet such peril with additional precautions.' "

We are inclined to think, from an examination of the entire record, that the jury was justified in finding that the train in question was operated at the time and under all the circumstances in question, in such a manner as to amount to a wanton and wilful disregard of the rights of persons lawfully using this crossing. If the jury believed the testimony of certain witnesses of defendant in error then we think it was justified in finding that the acts complained of in the petition were done under such circumstances as that the natural and probable consequences of such acts would be to cause injury to others.

What acts constitute wilful and wanton disregard of the safety of others is very fully discussed in the case of *Atchinson, T. & S. F. Railroad Company* v. *Baker, Admr.*, 21 L. R. A. (N.S.), 427, and in various other authorities cited by counsel.

If we are correct in our conclusion that the jury was warranted under the evidence in finding that the conduct of the agents of the railroad company at the time in question amounted to wilful and wanton negligence, then the plaintiffs in error can not escape liability on account of any contributory negligence on the part of Mr. Mauck—even assuming that he was negligent, and that his negligence contributed to his receiving the injuries complained of.

In the case above cited, the first paragraph of the syllabus is as follows:

"In an action to recover damages on account of an injury to a pedestrian resulting from a locomotive being driven along the public street of a city at an unlawful and dangerous rate of speed, with no signal being given of its approach, and with no outlook being kept, the misconduct of those in charge of it may amount to such recklessness and wantonness as to cut off the defense of contributory negligence, although such employees did not know of the presence of the person injured, if to their knowledge the extent to which the street was used made an injury so probable that they must be deemed to have realized its imminence, and to have refrained from taking steps to prevent it because they were indifferent whether it occurred or not."

Counsel for defendants in error claim that there is no testimony showing negligence upon the part of Mr. Mauch; that it devolved upon the plaintiffs in error to prove their defense of contributory negligence; that in the absence of any testimony upon the question of Mauck's negligence the presumption is that he exercised ordinary care to protect himself from injury and was not guilty of negligence.

In view of the conclusion at which we have arrived, it is unnecessary to consider this question.

Plaintiffs in error also claim that the trial court erred in requiring the jury to stay out from 4:45 P. M., Saturday, until 2:30 A. M. Sunday morning. Our observation is that juries are

often kept out not merely a portion of the night but throughout the entire night. There is nothing in the record which would justify us in finding that the plaintiffs in error were prejudiced by reason of the jurors being held until that hour of the morning.

Plaintiffs in error also complain of various questions which the trial court permitted the plaintiff below to ask different witnesses. A list of such questions has been handed to this court. We have examined the record, and while some of the questions referred to are somewhat leading and suggestive, yet that is a matter which rests in the sound discretion of the trial court. We do not find any prejudicial error in the respects suggested.

Plaintiffs in error also claim that the court erred in refusing to give certain instructions to the jury. The bill of exceptions shows that after the court had concluded its charge to the jury the defendant excepted to the general charge of the court and asked the court to give certain further instructions to the jury. Assuming that the request for the charges in question was properly made, we have examined such requests to charge, and think they were properly refused. The charges requested had in part already been given in substance in the general charge of the court.

Finding no error in the record, prejudicial to the plaintiffs in error, the judgment of the lower court will be affirmed.