THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY V. JOHN I. BAKER, *as Administrator, etc.*

No. 15,730.   (98.Pac. 804.)

SYLLABUS BY THE COURT.

1. PERSONAL INJURIES—*Pedestrian on a Railroad Track—Contributory Negligence—Wanton Negligence of Defendant.* In an action to recover damages on account of an injury to a pedestrian resulting from a locomotive being driven along the public street of a city at an unlawful and dangerous rate of speed, with no signal being given of its approach and with no outlook being kept, the misconduct of those in charge of it may amount to such recklessness and wantonness as to cut off the defense of contributory negligence, although such employees did not know of the presence of the person injured, if to their knowledge the extent to which the street was used made an injury so probable that they must be deemed to have realized its imminence and to have refrained from taking steps to prevent it because they were indifferent whether it occurred or not.

2. ——— *Wanton Negligence—Knowledge of Plaintiff's Peril.* In the trial of such an action an instruction that "wanton negligence is the failure of one charged with a duty to exercise an honest effort in the employment of all reasonable means to prevent a serious injury" is insufficient as a definition of conduct that would authorize a recovery regardless of contributory negligence. If the employees in charge of the engine did not know of the presence of the person injured it is essential that the jury be told what condition will supply the lack of actual knowledge.

3. EVIDENCE—*City Ordinance—Proof of Publication.* Inasmuch as the statute requires an ordinance to be published before it takes effect, and provides that to its entry in the ordinance book shall be appended a note stating the date of its publication, no other provision being made for preserving evidence of the fact of publication, if no notation with regard thereto is found in the proper place the ordinance is not admissible in evidence without other proof that it has been published.

Error from Johnson district court; WINFIELD H. SHELDON, judge. Opinion filed December 12, 1908. Reversed.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for plaintiff in error.

*J. W. Parker,* and *C. L. Randall,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: Sarah E. Baker was killed by a train of the Atchison, Topeka & Santa Fe Railway Company in a street of Olathe. An administrator recovered a judgment on this account, from which the company prosecutes error. The special findings, supplemented by the general verdict, may be deemed to have established these facts:

Mrs. Baker was 71 years old. She had had three slight strokes of paralysis, two manifesting themselves in her hand and one in her face, but her hearing and sight were in good condition for one of her age. Her home was in the middle of a block facing east upon a street sixty feet wide, along which ran two railroad tracks about twelve feet apart, equidistant from the middle of the street, the space between them being filled in with cinders and in common use by foot travelers. Most persons going along the street on foot, especially when it was muddy, used this ballasted portion. There was no sidewalk upon the side of the street where Mrs. Baker lived. Four feet from her

fence there was a ditch, across which two planks were laid, reaching to the nearer track.   The depot was a block and a half to the south.   About three o'clock in the afternoon of the day of her death she left her house, crossed the planks over the ditch, and was struck and killed by a north-bound freight-train running on the nearer track at the rate of fifteen miles an hour, neither the bell nor the whistle having been sounded after the engine passed the depot.   The train did not stop at the depot, but went through the town, in accordance with custom, with steam cut off, the grade permitting this.   Every point on the path taken by the deceased from her fence to the track commanded an uninterrupted view of the track to the south for a distance of three-quarters of a mile.   The engineer and fireman could have seen Mrs. Baker at the place where she was killed if they had been on the lookout, but not having kept a careful watch ahead of the engine they did not see her at all.   A city ordinance limited the speed of trains to six miles an hour.

There seems to be nothing in the circumstances of the case that relieved Mrs. Baker from the duty of looking down the track before attempting to cross it.   If she looked she must have seen the approaching train. Therefore, if her own negligence was not a contributing cause of her death, the reason must be that although she saw the train she so far misjudged its speed, while using ordinary diligence, as to suppose she had time to cross in safety before it would reach her.   The plaintiff argues that its unusual, unlawful and dangerous rate, the failure to use the bell or sound the whistle, and the fact that the engine was not using steam, all tend to show that this was the real situation.   But the jury seem not to have taken this view, for in answer to the question why she did not get out of the way of the train they answered that they did not know.   However, they did find that the accident was due to the reckless and wanton misconduct of the employees in charge of

the engine, and this finding, if it stands, renders the matter of contributory negligence immaterial. With regard to this the railroad company makes two contentions: (1) That the evidence did not justify submitting to the jury the question of recklessness and wantonness, and (2) that, if so, there was error in the instructions on the subject.

As the employees did not see Mrs. Baker, such recklessness and wantonness on their part as to render the company liable notwithstanding her contributory negligence can only be attributed to them upon the theory that to their knowledge the public street near the place of the accident was in such general use that they must be deemed to have understood that foot-travelers were likely to be there, and understanding this to have chosen to omit all warning of the approach of the engine, not necessarily because they affirmatively desired to kill or maim any one, but because they were entirely indifferent whether they did so or not. The running of a train at an excessive speed along or across a busy street of a populous city, without either outlook or signal, may well be held to exhibit such contempt for the rights of others as to supply the place of positive malice. Thus, in *Ga. Pacific Railway Co. v. Lee,* 92 Ala. 262, 9 South. 230, it was said:

"To run a train at a high rate of speed, and without signals of approach, at a point where the trainmen have reason to believe there are persons in exposed positions on the track, as over an unguarded crossing in a populous district of a city, or where the public are wont to pass on the track with such frequency and in such numbers—facts known to those in charge of the train —as that they will be held to a knowledge of the probable consequences of maintaining great speed without warnings, so as to impute to them reckless indifference in respect thereto, would render their employer liable for injuries resulting therefrom, notwithstanding there was negligence on the part of those injured, and no fault on the part of the servants after seeing the danger. The doctrine is not based on the idea that they

ought to have sooner observed the danger, however, but on the ground that they knew of its existence—of the presence of people in positions of peril, as a matter of fact, without seeing them at all in the particular instance." (Page 271.)

And in *L. S. & M. S. Ry. Co. v. Bodemer,* 139 Ill. 596, 29 N. E. 692, 32 Am. St. Rep. 218, it was said:

"If an engineer, knowing that persons are accustomed to cross a track between the streets of a large and crowded city, drives his engine forward 'recklessly,' that is to say, with indifference as to whether such persons are injured or not, and at a rate of speed 'greatly' in excess of that limited by a city ordinance, an injury thereby inflicted upon one of such persons, even though he be a trespasser, will be regarded as the result of 'such a gross want of care and regard for the rights of others as to justify the presumption of wilfulness or wantonness.'" (Page 611.)

The conduct of the employees in charge of an engine in failing to take measures for the protection of a person upon the track can be characterized as "wanton," in the sense in which that word is used in this connection, only when they actually know of his presence, or when the situation is substantially the same as though they had such knowledge—when such knowledge may fairly be imputed to them. It is not enough for that purpose that the exercise of ordinary diligence would have advised them of the fact, for their omission of duty in that regard amounts only to negligence. Nor is it enough that they know some one might be in the place of danger; the probability must be so great—its obviousness to the employees so insistent—that they must be deemed to realize the likelihood that a catastrophe is imminent and yet to omit reasonable effort to prevent it because indifferent to the consequences. The evidence here falls short of that in the cases from which the foregoing quotations are made only in the size of the city and the amount of travel over its streets, the difference being one of degree. It affords a rela-

tively slight basis for imputing to the engineer or fire-
man what amounts almost to a knowledge of the de-
cedent's danger, but we conclude that it was sufficient
to entitle the plaintiff to go to the jury on this issue.

. The fact that the evidence tending to charge the engi-
neer and fireman with knowledge that there was likely
to be some one on the track at the place of the accident
was so meager makes it especially important to con-
sider carefully whether the jury were fully advised of
the degree of turpitude the verdict attributed to these
employees.   The instructions, after stating that con-
tributory negligence would not defeat a recovery if
the negligence of the agents of the defendant was
wanton and reckless, defined these terms as follows:

"Recklessness is an indifference, whether wrong is
done or not, an indifference to the rights of others.
Wanton negligence is the failure of one charged with a
duty to exercise an honest effort in the employment of
all reasonable means to prevent a serious injury."

If it had been established that the engineer or fire-
man saw Mrs. Baker on or near the track these defini-
tions might have been sufficient, for their language
would be understood as used with reference to that
situation.   But as the jury found this fact not to exist
it was necessary that they should be told what other
conditions would replace that of actual knowledge.
This information was not given them in any part of the
charge.   The second sentence of the part of the in-
struction quoted was doubtless suggested by this state-
ment in volume 21 of the American and English En-
cyclopædia of Law, at page 478: "Wanton negligence
has been held to be the failure of one charged with a
duty to exercise an honest-effort in the employment of
all available means to prevent injury."   The omission
so described might under some circumstances amount
to little if anything more than mere negligence—the
failure to use ordinary diligence.   What is lacking in
this as a complete definition is a reference to actual or

constructive knowledge of the imminence of the peril. The only case cited in its support is *Birmingham Railway & Electric Co. v. Pinckard,* 124 Ala. 372, 26 South. 880. The full language of the court in that case was as follows:

"Wantonness, as has been defined by this court, 'is the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure'. . . . And it is immaterial whether the failure to discharge the duty in the exercise of care and diligence springs from an act of commission or omission. In the discharge of such duty, an honest effort in the employment of all available means to prevent the injury is essential under the requirements of the law to acquit the party, so charged with the duty, of culpability." (Pages 374, 375.)

The duty there referred to, the disregard of which amounts to wantonness, is manifestly that which arises only when the person charged with dereliction has knowledge of the danger or of the facts which impute that knowledge to him. On account of the omission of the instructions to cover this feature of the matter a new trial will be ordered. The effect of the omission was intensified by employing the term "gross negligence" in one part of the charge as the equivalent of "wanton recklessness," and in another defining it as the want of slight care. Although what is really reckless and wanton misconduct is sometimes spoken of as gross negligence, the expression is everywhere recognized as inaccurate and unfortunate, because it seems to imply a difference only of degree, whereas the whole doctrine that contributory negligence is no defense where the injury is the result of recklessness and wantonness is based upon the theory of a difference in kind. For the same reason the phrase "reckless and wanton negligence" has a misleading tendency. One who is prop-

erly charged with recklessness or wantonness is not simply more careless than one who is only guilty of negligence; his conduct must be such as to put him in the class with the wilful doer of wrong. The only respect in which his attitude is less blameworthy than that of the intentional wrong-doer is that instead of affirmatively wishing to injure another he is merely willing to do so. The difference is that between him who casts a missile intending that it shall strike another and him who casts it where he has reason to believe it will strike another, being indifferent whether it does so or not.

Of other questions argued, not covered by what has already been said, only one seems likely to arise again. An objection was made to the introduction in evidence of the ordinance referred to, upon the ground that no showing was made that it had ever been published, the overruling of which is assigned as error. The statute (Gen. Stat. 1901, § 1095) requires the city clerk to enter every ordinance in an "ordinance book" immediately after its passage, appending thereto a note stating, among other things, the date of its publication. The plaintiff introduced merely the contents of the ordinance itself as shown by the entry in this book. He did not show that any note was appended giving the date of publication. On the other hand it was not made affirmatively to appear that such note was wanting. This notation seems to be the only record or proof required by the statute of the fact of publication. If no notation is made—if no evidence on the subject is found in the place where the law directs it to be preserved— an inference follows that there has been no publication, which overcomes any presumption favorable to the ordinance that might arise from the fact of its record in the ordinance book.

The judgment is reversed and a new trial ordered.