No. 25,762.

VINCO FABAC, *Appellee,* v. ST. LOUIS & SAN FRANCISCO RAILWAY
COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

NEGLIGENCE—*Wantonness—Pleading, Proof and Variance—Instructions—Ver-*
. *dict.* The proceedings in an action for damages resulting from collision
of a switch engine with a motor truck, considered, and *held:* (1) The pe-
tition charged wantonness. (2) Defendant may not complain of a variance
between pleading and proof, if there was variance, because defendant did
not show it was misled. (3) Defendant may not complain of an instruc-
tion given the jury which was too restricted, because defendant did not
request that the instruction be improved. (4) The verdict was sustained
by the evidence.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER,
judge. Opinion filed July 11, 1925. Affirmed.

*A. L. Berger,* of Kansas City, *L. E. Durham, Henry S. Conrad, Hale Houts,*
*Joseph A. Guthrie,* all of Kansas City, Mo., and *W. F. Evans,* of St. Louis, Mo.,
for the appellant.

*David F. Carson* and *James T. Cochran,* both of Kansas City, for the ap-
pellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by an ice peddler to recover
damages for injury to his Ford motor truck received in a collision
with one of defendant's locomotives. Plaintiff recovered, and de-
fendant appeals.

Along the north side of the general office building of Armour and
Company in Kansas City is a street known as railroad alley, which
extends from east to west. Opening on railroad alley from the north,
but not crossing it, at least for traffic purposes, is Ewing street,
which leads into the Armour plant. Because of the hogpens on its
east side, it is called "hogpen alley," and is closed by a gate. De-
fendant has a track which enters railroad alley from the east, extends
westward along the south side of the street, and curves northward
across the street into hogpen alley. Some distance east of hogpen
alley and on the north side of railroad alley is the Armour ice house,
where ice is sold. West of the entrance into hogpen alley and on the

Railroads, 33 Cyc. pp. 1055, 1066, 1087; Trial, 38 Cyc. p. 1695; 21 R. C. L.
611, 3 R. C. L. Supp. 1175.

Fabac v. St. Louis & S. F. Rly. Co.

south side of railroad alley is a scale where purchased ice is weighed. Ice peddlers load their trucks at the ice house, and drive in a direction south of west across railroad alley and across the curve of the railroad track to the scale. The accompanying sketch, which is merely a sketch, will assist in visualizing the locality.

The accident occurred about 8:35 o'clock in the morning. Plaintiff loaded his truck with ice at the ice house and proceeded toward

the scale. Another ice peddler was on the scale ahead of him, and plaintiff stopped with the front of his truck across the track on the scale side and with the rear of the truck on the track. A switch engine backed out of hogpen alley and the tender struck the truck. The truck was pushed fifteen or twenty feet, thrown against the office building and demolished.

The petition said nothing about plaintiff having stopped on the railroad track, but alleged that plaintiff was standing still at the corner of the Armour office building, in plain view of those operating defendant's engine, for a distance of more than seventy-five feet, but that they—

"Carelessly and negligently backed said switch engine into, against and upon said truck of this plaintiff, and carelessly and negligently failed and neglected to keep a watchman on the back end thereof, and carelessly and negligently failed and neglected to stop said switch engine in time to prevent said collision or to check the speed thereof so that plaintiff could escape therefrom, and that said defendant, agents, servants and employees could and did see plaintiff in a place of danger, and carelessly and negligently ran said engine into and against said motor truck, . . ."

The answer contained a general denial and a plea of contributory negligence. The reply contained a general denial.

In describing the place where plaintiff was injured, the petition alleged that Armour and Company provided a scale on the street, to be used by persons going there to purchase ice, but there was no allegation that the place was much frequented by ice peddlers or others, or allegation which indicated in any manner the extent to which the street was used, whether by pedestrians or by vehicular or other traffic. There was no allegation that those in charge of the engine gave no warning when the engine was about to enter the street; there was no allegation that no lookout whatever was maintained; and there was no allegation that the engine was moved at a rate of speed improper on account of traffic conditions or other circumstances.

Plaintiff called defendant's engineer as a witness to describe the locality and the general conditions of the locality, but not the accident. In doing so the witness described with particularity everything shown by the sketch. In the course of his direct examination he said he knew the Armour and Company office building on the south side of railroad alley was a place where persons came to seek employment of the company; he knew where the ice-loading dock and the scale were, and he saw ice wagons there when he went

Fabac v. St. Louis & S. F. Rly. Co.

through the gate and into the plant in the morning; and he knew
railroad alley was used by a large number of men continually pass-
ing to and fro during the day, and was paved with brick.  Defend-
ant was not permitted to cross-examine plaintiff's witness with
reference to factors of the accident.  Objections were sustained to
questions whether it was usual and customary to back around the
curve into railroad alley, whether the engine was backing that morn-
ing, whether while switching on various occasions the engineer had
ever at any time seen anyone stop his car on the track, whether he
saw plaintiff's truck on the track, and whether he saw plaintiff
around there any time that morning, as not proper cross-examina-
tion.  The court said defendant "should not go into the details of
the accident on cross-examination."  The only answer the witness
was permitted to give was that he had never seen any people stand-
ing on the track prior to the accident.  No evidence whatever was
introduced relating specifically to traffic conditions at the time the
engine backed into railroad alley.  The only testimony touching the
subject was plaintiff's testimony that there were other trucks getting
ice when he was there; a witness whose attention was attracted by
the noise of the accident said he was waiting at the office building to
ask for employment, and another witness said he was at the other
end of the building when the collision occurred.  There was neither
allegation nor evidence that due care was not used, either toward
traffic in general or toward plaintiff in particular, in bringing the
engine out of hogpen alley and into railroad alley.  The court gave
the jury the following instructions:

"If you find from the preponderance of the evidence that the employees of
the defendants were guilty of negligence in one or more of the particulars al-
leged by the plaintiff, substantially as hereinbefore stated, and that such neg-
ligence was the proximate cause of injuries to the automobile truck of the
plaintiff, it will be your duty to return a verdict in his favor, unless you
further find from the preponderance of the evidence that the plaintiff was
also guilty of negligence which directly contributed as a proximate cause to
such injuries to plaintiff's truck, in which event you will find for the defendant,
notwithstanding any negligence on its part, unless the negligence of the de-
fendant's employees was of such a gross or reckless character as to amount to
willfulness or wantonness as hereinafter stated.

"If you find from the preponderance of the evidence that the place in
question was one where persons were continually passing to and fro across
and upon the tracks of the defendant, and the danger of backing a switch
engine into and upon the street or alley at the point in question, under the
circumstances in this case, was so obvious and insistent that the engineer in
charge of the switch engine should have known thereof and should have known

that a collision was imminent, and failed to exercise reasonable care to prevent the collision with plaintiff's car because he was indifferent as to the consequences to such an extent as to amount to wantonness; then and in that event, if the plaintiff suffered damages to his truck by reason of such wantonness on the part of said engineer, you should find a verdict in favor of the plaintiff, regardless of any negligence on his part, in getting into a place of danger upon the tracks of the defendant.

"Wanton negligence, as used in these instructions, is the willful failure of one charged with a duty to exercise an honest effort in the employment of all reasonable means to prevent a serious injury."

Defendant says the petition charged nothing but negligence, which the court defined as follows:

"Negligence is the want of ordinary care and prudence in doing or failing to do an act. Ordinary care and prudence means such reasonable care, caution and judgment as would be expected of an ordinarily prudent and careful person under the circumstances disclosed by the evidence."

This court has made it plain that wanton conduct differs from negligent conduct not simply in degree of culpability, but in kind:

"In an action to recover damages on account of an injury to a pedestrian resulting from a locomotive being driven along the public street of a city at an unlawful and dangerous rate of speed, with no signal being given of its approach and with no outlook being kept, the misconduct of those in charge of it may amount to such recklessness and wantonness as to cut off the defense of contributory negligence, although such employees did not know of the presence of the person injured, if to their knowledge the extent to which the street was used made an injury so probable that they must be deemed to have realized its imminence and to have refrained from taking steps to prevent it because they were indifferent whether it occurred or not." (*Railway Co. v. Baker*, 79 Kan. 183, syl. ¶ 1, 98 Pac. 804.)

Although the district court used the misleading term wanton negligence, it endeavored to instruct the jury in accordance with this doctrine. Where is wantonness found in the petition?

Of course it was not necessary for plaintiff to use the word "wantonness." The allegation that defendant backed the switch engine into the truck did not charge wantonness. The testimony produced in the abstract and counter abstract contains no reference to the subject of absence of a watchman on the rear of the engine. Plaintiff's brief contains no reference to that ground of negligence. It seems to have been abandoned at the trial, does not appear to be relied on here, and may be dismissed from further consideration. The result is, if the petition charged wantonness, it did so by the allegation that the engineer carelessly and negligently failed and neglected to stop the switch engine in time to prevent the collision, or to check the

speed of the engine so plaintiff could escape, and saw plaintiff in a place of danger and carelessly and negligently ran the engine against the truck.

It is true a petition must state facts sufficient to constitute a cause of action. If the cause of action be failure to exercise such reasonable care as would be expected of an ordinarily prudent and careful person under the circumstances, the petition must exhibit it. If the cause of action be wantonness, the petition must exhibit wantonness. This results from the distinction between negligence and wantonness recognized in *K. P. Rly. Co. v. Whipple*, 39 Kan. 531, 18 Pac. 730, and fully elucidated in the Baker case, *supra*, which is a leading authority on the subject. According to the Baker case, failure to exercise due care toward one discovered in a position of peril is not wantonness; it is negligence; that is, it is failure, without purpose or equivalent of purpose to injure, to use diligence, to act quickly, to employ means which might have been employed to avert injury. To constitute wantonness toward one discovered in a position of peril, there must be will to injure, or there must be such indifference to consequences, with realization that catastrophe is imminent, as to amount to willingness to injure. However, the court holds that if an engineer operating a switch engine sees a Ford truck in a position of danger, fails to stop the engine to prevent collision, or fails to check the speed of the engine to allow the truck to extricate itself, and carelessly and negligently runs into the truck, the statement of those facts, without more, constitutes wantonness on the part of the engineer.

As indicated above, there was neither allegation nor evidence specifically characterizing traffic conditions on the street at the time of the accident, or the manner in which the engine emerged upon the street from hogpen alley. For all that was pleaded or proved, the engine may have come out of the gate and upon the street in the most careful manner, and there was no evidence that anybody or anything afterward intervened between the engine and the truck. The burden of the petition was that the engineer could have seen plaintiff seventy-five feet away, did see him in a place of danger, and ran him down. Plaintiff's testimony was that when he stopped on the track he allowed his motor to run. Two or three minutes afterward he heard somebody halloo, and saw the engine coming slowly. He tried to back the truck off the track, but killed his motor, and "couldn't get away nowhere." The man who hallooed

ran up on the right side of the engine and called to the engineer to stop. The engine was then perhaps fifty feet away, but it was not stopped. Plaintiff told only a part of the story. The testimony of the man who hallooed, who was in fact plaintiff's companion in the truck, differed from that of plaintiff in important details. The man said that the truck motor stopped. He jumped off and ran around and cranked it. The motor stopped again, and he ran up ahead and called to the engineer to stop. The engine was then fifteen or twenty feet from the truck. However, plaintiff's own evidence of wantonness has been stated. That was the wantonness which this court holds was charged in the petition. The district court did not submit it to the jury. The wantonness which the court submitted to the jury was reckless projection of the engine into a street where people were continually passing to and fro (instruction No. 14)—something which the petition did not pretend to charge.

The circumstances under which the statement of the engineer, picked up by the court and used as the basis for instructing on wantonness, was made, have been stated. The passing to and fro of people on the street was not a detail of the accident. Defendant complains that the case was sent to the jury on an issue not raised by the pleadings or involved in the evidence.

The court's view is that, so far as the pleading is concerned, it charged the equivalent of willful injury to plaintiff. He was a person using the street, and the distinction between a cause of action for thrusting an engine into a crowded street where danger was imminent, without regard to consequences, and a cause of action for moving the engine in a manner not alleged to be negligent, into a street not alleged to be crowded, and afterwards failing to prevent injury to one discovered in a position of peril, is not material or important. While the circumstances of opening the gate—looking or not looking for vehicles and pedestrians at the exit of hogpen alley upon the north side of railroad alley, presence or absence of persons or vehicles there that might be threatened by bringing the engine out, the giving or not giving of warning, and proceeding cautiously or incautiously to enter the north side of railroad alley—make one situation; and subsequently discovering a truck standing near the corner of the office building on the other side of the street, and not stopping or checking speed before striking the truck, make another situation, each requiring its own proof—defendant could resist plaintiff's action under one charge as well as the other.

While ordinarily it is better for the court to submit to the jury the issue made by the pleadings and to which the evidence was plainly directed, still in this case plaintiff got before the jury evidence that persons continually passed to and fro on the street. The record discloses no objection to the evidence; and if the court chose not to submit to the jury in terms the case of running down plaintiff after seeing him in a place of danger, but submitted a case not in the pleading but touched on by the evidence, the result was a variance between pleading and proof. The revised code contains the following:

"No variance between the allegations in a pleading and the proof is to be deemed material, unless it have actually misled the adverse party, to his prejudice, in maintaining his action or defense upon the merits. Whenever it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the court, and it must also be shown in what respect he has been misled, and thereupon the court may order the pleading to be amended, upon such terms as may be just." (R. S. 60-753.)

Defendant did not comply with this statute, but merely relied in its motion for new trial on surprise which reasonable prudence could not have guarded against, abuse of discretion of the district court, erroneous rulings of the court, and erroneous instructions given by the court. It is true the code also provides that when the allegation of claim is unproved, not in some particular only, but in general scope and meaning, the case is not to be deemed one of variance (R. S. 60-755). But that section is not regarded as applicable here.

Plaintiff's witness, the engineer, testified that switch engines use the track on railroad alley and running into hogpen alley constantly every day and every hour of the day. Plaintiff testified he knew the track was likely to be used for the operation of trains and knew it was dangerous to allow his truck to stand on the track. Plaintiff testified that as he approached the track on his way to the scale he looked toward the north, and saw no engine. There was room for him to stop on the east side of the track, but he wanted to get to the scale. Without halting he drove on the track, stopped there, and stood there waiting for the man ahead of him to drive off the scale. While standing on the track he heard a man halloo. Two or three minutes elapsed between the time he looked north for the locomotive and the time he heard the man halloo. While standing on the track he did not see any engine. After he heard the man halloo he

saw the engine moving slowly toward him. When asked what prevented him from seeing the engine he said there was nothing there when he looked. It will be observed from this testimony that plaintiff dealt with the subject of his looking for the engine, and he looked just twice, once before he drove on the track and once after he heard the man halloo. Defendant contends that after plaintiff stopped the truck on the track, a place known to him to be dangerous, he did not keep watch for the engine, which might come out of the gate at any time, and consequently that plaintiff was guilty of contributory negligence as a matter of law. Defendant's demurrer to plaintiff's evidence was overruled, and defendant's motion for a directed verdict in its favor was denied.

When the instructions to the jury were presented, defendant's wantonness was fully covered. Plaintiff's particular duty in the presence of railroad tracks was not mentioned. It may be that defendant's attorney mistakenly assumed that in a railroad-accident case in which one of the principal factors was admitted camping on a railroad track in constant use, at a place realized to be dangerous, without keeping watch for a train, the court would tell the jury the law on the subject without request. In any event, defendant made no request for the stock instruction about a railroad track being a place of danger, and duty to be on guard while within the danger zone. Therefore it became necessary for defendant's attorney to make an oral request that the court give the jury an instruction on the subject of plaintiff's negligence applicable to the particular situation the jury had to solve. The court said counsel should have submitted an instruction. Plaintiff's attorney intervened and said defendant's attorney was right. The court yielded, and in discussing the content of the proposed instruction defendant's attorney specified these matters: duty of plaintiff in crossing a railroad track to stop, look and listen; duty of plaintiff to keep a lookout; and duty of plaintiff to look and listen. The court said: "I think it should be given; I will give it." The court then prepared and gave the jury instruction No. 18, which reads as follows:

"18. You are further instructed that a railroad track is of itself a warning of danger to a person who is about to cross or come in close proximity to the same. It was the plaintiff's duty before going upon or into close proximity to the defendant's railway track to look and listen to ascertain whether or not there was an approaching train or engine, and if by reason of obstructions he could not ascertain by looking and listening, it was his duty to stop and also to look and listen before going upon such tracks; and if the plaintiff failed

Fabac v. St. Louis & S. F. Rly. Co.

in the performance of these duties or any of them, he was guilty of negligence. . . ."

Whether plaintiff looked before he drove on the track was not important. He said no engine was in sight when he drove on the track. Failure to keep watch for an engine which might at any time come out of hogpen alley while his truck stood on the track was important. It may have been the real cause of the accident. The instruction did not touch that subject. Failure to instruct on the subject was material in this: It may be the jury reached the conclusion the engineer was negligent, but not wanton, and found for plaintiff because it appeared from instruction No. 18 he had discharged his duty by simply looking as he approached the track.

It might be thought that when the court waived written request for instruction, undertook to act on oral request which brought the matter of duty to be observant to its attention, placed instruction No. 18 in its proper place in the set of instructions, and read it to the jury, instruction No. 18 should be treated the same as any of the others. The majority of those adhering to this opinion regard that view as unsound, and hold that even although the instruction did not cover a material matter, and may have been harmful, defendant is not in position to complain. Even if the instruction was read to the jury before defendant knew what it contained, request should have been made to the court to extend it.

The subject of last clear chance is discussed in the briefs. The court did not submit last clear chance to the jury.

Defendant contends the verdict was not sustained by the evidence. The court is of the opinion the evidence disclosed a marked case of wantonness.

The judgment of the district court is affirmed.

Burch, J. (dissenting): In preparing the foregoing opinion effort has been made to state the facts accurately and to present the legal questions involved so they stand out clearly. Nothing more is needed to demonstrate unsoundness of the decision.

Dawson, J. (dissenting): I am unable to discover anything either pleaded or proved which savors of wantonness on the part of the defendant. And plaintiff's contributory negligence in stopping his truck on the railway track was confessed. His own testimony as abstracted in indirect discourse reads:

"That he [plaintiff] had seen trains on the track in question and knew that trains were liable to be operated along the track. He knew that it was dangerous to let his truck stand on the track. That he stopped on the track because there were men behind him who wanted to get to the scale, and because he wanted to get closer to the scale and there was a man already on the scale. That there was room on the east side of the track before he went on the track, but that he wanted to get across to the scale. That he stopped right on the track."

I therefore dissent.