No. 36,319

Frances Frazier, *Appellee*, v. Cities Service Oil Company, Sinclair Prairie Oil Company, Paul Kiefer and Frank M. Powden, *Appellants*.

(157 P. 2d 822)

Opinion filed April 7, 1945.

*I. L. Lockewitz,* of Tulsa, Okla., and *R. O. Mason,* of Bartlesville, Okla., argued the cause, and *P. K. Smith,* of Wichita, *K. M. Geddes,* of El Dorado, *T. J. Hanlon,* of Independence, *Edward H. Chandler, Ralph W. Garrett,* both of Tulsa, Okla., *A. M. Ebright* and *Hayes McCoy,* both of Bartlesville, Okla., were on the briefs for the appellants.

*J. B. McKay,* of El Dorado, argued the cause for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action for damages for personal injuries. The defendants' demurrers to plaintiff's petition were overruled and they appeal.

Omitting formal parts, as well as matters not of present concern, the petition alleged that the defendant Cities Service Oil Company, hereafter referred to as Cities Service, owned and operated an oil and gas lease on the West Half of the Northwest Quarter of a certain section, and that defendant Kiefer was its foreman, and that Sinclair Prairie Oil Company, hereafter referred to as Sinclair, owned and operated an oil and gas lease on the Northwest Quarter of the Southwest Quarter of the above-mentioned section, and that the defendant Powden was its foreman; that about 1919 the predecessor in title of Cities Service built on its lease a large plant called a dehydrator where it treated the oil from about seventy-five separate tracts containing about thirteen hundred fifty wells, to remove water, basic sediment and other waste, and from 1919 until a few years prior to the filing of this suit, several million barrels of oil were there treated and a vast volume of water, basic sediment and refuse were deposited in two large ponds on the Cities Service lease, and that the basic sediment and refuse were highly inflammable, a fact well known to all of the defendants; that the north banks of the two ponds were parallel to and a few feet south of a public highway which extends along the north side of the Cities Service lease, and the west bank of one of the ponds is near the west line of the lease, the highway mentioned being surfaced with "black top" and being one of two main highways between El Dorado and Wichita. The eleventh paragraph of the petition recited:

"11. On November 11, 1943, at about 1:30 p. m., plaintiff and one M. Ruth

Teter, a friend of plaintiff, started from El Dorado, Kansas, to Wichita, Kansas, on the highway above mentioned, in a Dodge automobile owned and operated by plaintiff. As plaintiff and said M. Ruth Teter approached said ponds from the east, they observed smoke which originated on the Sinclair Lease blowing across said public highway in the vicinity of said ponds. After plaintiff and said M. Ruth Teter first saw such smoke and before they had reached the place where such smoke was blowing across the highway, they met two or three motor vehicles coming from the west, which plaintiff thought and believed had driven through said smoke where it was blowing across said highway. As plaintiff and said M. Ruth Teter approached the place where said smoke was blowing across the highway, plaintiff did not see or observe any fire or flame in or about said ponds or said highway and plaintiff did not know that there was any fire or flame any closer than where such smoke was originating on said Sinclair Lease, and thought and believed that she could drive through such smoke in safety and accordingly plaintiff drove said automobile along the north side of said public highway into said smoke. After said automobile had proceeded into said smoke for a distance of several feet, the exact distance being to plaintiff unknown, the smoke dropped to the surface and grew more dense. By reason of the dense smoke, plaintiff lost her sense of direction and drove said automobile off the traveled portion of the highway on the south side thereof, whereupon plaintiff stopped and at said time a flash of flame from said east pond enveloped said automobile. Plaintiff and said M. Ruth Teter thereupon alighted from said automobile on opposite sides thereof and plaintiff succeeded in making her way out of said smoke and flame to the east side thereof, when plaintiff ascertained that said M. Ruth Teter had not made her way out. Plaintiff thereupon made two trips back into such smoke and flame in search of said M. Ruth Teter, and on the second trip found said M. Ruth Teter and assisted her out of such smoke and flame. In making her way out of said automobile as aforesaid, and in making such trips back in search of said M. Ruth Teter, plaintiff inhaled smoke and fire and suffered and sustained severe, painful and permanent burns and injuries as hereinafter set forth."

The above was followed by an allegation the fire was communicated to the east pond on the Cities Service lease from a fire set out by defendant Powden in the course of his employment on the Sinclair lease on November 11, 1943, and at the time the fire was set out a strong wind was blowing from where the fire was started toward the pond; that the surface of the ground between the two places was covered with highly inflammable objects and substances consisting of dry weeds, grasses and other vegetation, tanks, derricks and structures, all of which were saturated to some extent with crude oil, and ponds and tanks containing basic sediment and crude oil, a more accurate description of which objects and substances plaintiff was unable to give. It was then charged that Powden and Sin-

clair were guilty of gross and wanton negligence in three respects. To avoid repetition of statement, the first is quoted in full:

"(a) In carelessly, negligently, recklessly, wilfully and with complete indifference to the natural and probable consequences, setting out said fire at said time and place, when they knew or should have known that such fire was likely to spread beyond the boundaries of said Sinclair Lease and in particular was likely to spread to said ponds."

Using the same formula of language (b) referred to setting out a fire when a strong wind was blowing and (c) to the failure to take necessary precautions to prevent the fire from spreading beyond the Sinclair lease. It was then charged, using the same formula of language, that Cities Service was guilty of gross and wanton negligence in (a) operating and maintaining ponds along and adjacent to the highway, (b) permitting the ponds to be and remain full of oil, basic sediment and other dangerous substances, (c) permitting weeds, noxious vegetation and other inflammable substances to grow and accumulate along the banks of the ponds and adjacent thereto and (d) failing to construct fire guards along the ponds or to take precautions to prevent fire from adjacent premises. It was further charged that all defendants were guilty of gross and wanton negligence in failing to give warning to the traveling public and plaintiff in particular, of the danger of using the highway after the fire had spread to the east pond, or after it became apparent to the defendants the fire would so spread. It was also alleged that the joint and concurrent acts of negligence of the defendants solely and proximately caused plaintiff's injuries.

Allegations as to plaintiff's injuries need not be noted. Her prayer was for actual damages of $27,247.56 and for punitive damages of $25,000.

For present purposes it may be said that similar motions to strike and to make definite and certain were filed by all of the defendants. We are now concerned with that portion asking that the plaintiff make her petition more definite and certain by stating "whether she could see through the smoke as she entered same or whether all of the smoke was crossing the highway above the surface of the road and above the top of plaintiff's automobile so as to not interfere with her vision of the highway." The motions to make definite and certain were denied and the defendants then filed demurrers that the petition did not state a cause of action and did show that plaintiff was guilty of contributory negligence which

caused her injuries, if any. These demurrers were overruled and defendants perfected appeals to this court. The specifications of error cover the matters hereafter discussed.

In support of their various contentions extensive briefs have been filed by Cities Service and its foreman and by Sinclair and its foreman, and by the plaintiff in support of the trial court's rulings. In these briefs our attention is directed to many authorities, only a few of which will be specifically mentioned.

Appellants direct our attention to the rule that a petition, to which motions to make definite and certain have been directed and successfully resisted, is subject to critical analysis and strict construction against the plaintiff on general demurrer. (See, e. g., *Mead v. City of Coffeyville,* 152 Kan. 799, syl. ¶ 2, 107 P. 2d 711, and *Frogge v. Kansas City Public Service Co.,* this day decided (post p. 687.) Appellee answers that if the motions are properly overruled the rule contended for has no application. Under either contention it is necessary that we examine the motions to make definite and certain to determine whether they should have been sustained.

We consider first paragraph 11 heretofore quoted, and the motion directed against it. Without repeating the exact words of that paragraph, it is stated that plaintiff was driving westwardly and as she approached the place of the accident smoke was blowing across the highway, she met two or three cars which she "thought and believed" had driven through the smoke; that she "thought and believed" she could drive through the smoke in safety and after she proceeded "for a distance of several feet" "the smoke dropped to the surface and became more dense" and by reason of the dense smoke she lost her sense of direction and drove off the traveled portion of the road, whereupon she stopped, and at which place she received her injuries. The purpose of the motions was quite evident. The allegations, strictly construed, lead to the conclusion she could not see through the smoke, but nevertheless, relying on her thought and belief that because other cars had driven through safely, she could do so, and acted accordingly. The allegation that the smoke dropped to the surface of the road and "grew more dense" leaves an inference it was "dense" over the road before it fell. If what plaintiff "thought and believed" as to her driving through the smoke in safety presented any issue of fact, it was not clear from the allegations of the petition whether plaintiff could see through the smoke as she proceeded and prior to the time the "smoke dropped to the

surface and grew more dense" or it was the latter event that prevented her seeing. As we read the petition, the allegations were not clear, definite or certain. Defendants were entitled to know on which state of facts plaintiff relied, and their motions to make definite and certain were to determine that matter. A situation quite analogous to the one here presented was involved in *Mead v. City of Coffeyville*, supra, and in that opinion may be found a discussion of the rulings on such a motion, whether the same may be considered on appeal and the effect of the rulings when a subsequent demurrer has been overruled. Reference is made to that opinion for what is there set forth will not be repeated here. In our opinion the motions in the instant case properly solicited information which would have clearly disclosed the exact state of facts relied on by the plaintiff and, in part, the theory of her cause of action, and the trial court should have sustained the motions. The plaintiff, having successfully resisted defendants' motions to make definite and certain as to a part of paragraph 11, the allegations of that paragraph, insofar as the motions extended, are subject to critical analysis and to strict construction against the plaintiff in consideration of defendants' demurrers, to which we proceed.

In support of their demurrers, the appellants contend, in substance, that under the allegations of her petition plaintiff, traveling along the highway, approached the place where she was injured, at a time when she saw smoke blowing across the highway, which was a warning of danger to a prudent person; that as she proceeded she could not see ahead to determine conditions in or beyond the smoke but nevertheless she continued until she entered dense smoke and the smoke dropped to the surface of the road and became more dense, and not until she lost her sense of direction and drove off to the south side of the traveled portion of the road did she stop her car. In support of the trial court's ruling on the demurrers appellee contends, in effect, that she is entitled to a liberal construction of her pleading, and that the petition alleges facts showing that defendants carelessly and negligently so handled a highly inflammable product in such manner that a dangerous condition was created on the leased premises; that as she approached the place of injury she saw smoke but no fire closer than the Sinclair lease; that she thought she could proceed safely through the smoke; that until the smoke dropped to the surface of the road and became so dense she lost her sense of direction there was no occasion for

her stopping and that she then did stop, and whether she was negligent in so doing was a fair question of fact for a jury and should not be decided as a question of law raised by the demurrers.

The above contentions are presented in various manners, but each will not be taken up and separately discussed. In our discussion we assume defendants are negligent as alleged in the petition. However, the same general rules that would measure defendants' negligence are applicable in determining whether plaintiff was guilty of negligence which would preclude her recovery.

For one to be negligent it is not necessary that he foresee injury in the precise form in which it in fact occurs, nor because the injury sustained is greater than he anticipates. See, as bearing on the question, *Walmsley v. Telephone Association,* 102 Kan. 139, 169 Pac. 197; *Kroll v. Railroad Co.,* 106 Kan. 294, 187 Pac. 661; 45 C. J. (Negligence, § 506) p. 946, and 38 Am. Jur. (Negligence, § 62) p. 713, and authorities cited. And so in the instant case it was not necessary, in order for plaintiff to be negligent that she anticipate that she would be injured by fire, but whether in proceeding when she could not see, she might be injured by running into an obstruction, into another car, a defect in the highway or other similar thing occasioned by her lack of ability to see in time to stop and prevent injury to herself or her property.

The same legal principles apply to cases where vision of the driver of an automobile is obscured by smoke, dust, fog, or other atmospheric conditions, and the duties of the driver under such conditions have been treated in many cases. (See the annotations in 37 A. L. R. 587 and 73 A. L. R. 1020 and Blue Book of supplemental citations thereto.) There have been many decisions of this court, some of which are noted in the above annotations, treating various states of facts and legal situations arising thereunder. This opinion would be unduly extended by making a detailed analysis of each decision showing the holding in a particular case and its applicability or not to the instant case.

In *Robinson v. Short,* 148 Kan. 134, 79 P. 2d 903, 12 JBK 244, the plaintiff drove in a dust storm. When she started she could see at least three city blocks. As she left the city limits and proceeded on the state highway her visibility was fifteen feet. She continued to proceed until visibility was reduced to three feet and while continuing to proceed she collided with a truck entering the highway from a side road. In discussing that state of facts, a review was

made of certain cases cited in the briefs in the instant case, and it was said:

"In the case before us plaintiff's evidence shows clearly that she was well aware as she drove along the highway that visibility was poor and that, notwithstanding, she continued to proceed, and for some distance drove when she could not see over three feet ahead of her car. Whether it would have increased her visibility had the headlights been lighted may be debatable, but if they would have helped she did not have them on. Because of the dust she drove in about the same circumstances as one would who drove an unlighted car on a dark night. That she did not correlate her speed with her ability to stop is clear, for she testified that as soon as she saw defendant's truck she put on her brakes, which were in good condition, but notwithstanding, she simultaneously hit the truck. We do not believe that reasonable minds could come to different conclusions respecting her negligence. Under the situation presented by the evidence, the trial court properly ruled that plaintiff was guilty of negligence which contributed to her injuries, and that defendant's demurrer to her evidence should be sustained." (L. c. 139.)

And it was held:

"It is negligence as a matter of law for an automobile driver, whose range of vision is limited to three feet ahead of his automobile because of a dust storm or dust cloud, to operate his automobile along a public highway at such a speed it cannot be stopped within the distance that objects on the highway ahead of it can be seen." (Syl. ¶ 3.)

Not long after *Robinson v. Short,* supra, was decided this court had occasion in *Carson v. City of Wichita,* 148 Kan. 215, 80 P. 2d 1114, 12 JBK 192, to consider contributory negligence of a plaintiff who in the nighttime and with insufficient light, backed his car into a pit near the highway, and it was there said:

"At almost every session of this court we are compelled to deny damages to persons injured in automobile accidents because, however negligent their adversaries in the litigation may have been, they themselves have also been negligent in driving their cars (or riding in them without protest) in situations where they could not see where they were going, and could not be assured that they could proceed with safety." (L. c. 220.)

In *Goodman v. Wisby,* 152 Kan. 341, 103 P. 2d 804, 12 JBK 191, 248, the question on appeal was whether a defendant, who sought recovery on a cross petition, was guilty of negligence precluding a recovery. Reference is made to that opinion for a complete statement of the facts, but in a summary way it may be said defendant charged that plaintiff's truck was being driven eastwardly on the wrong side of the highway; that defendant was going westwardly and as he approached the brow of a hill a car passed him going west, leaving a cloud of dust which restricted his vision to fifteen feet.

Defendant was traveling about forty-five miles an hour and passed the brow of the hill and continued to the west. The dust continued and he slowed down but continued on his side of the highway until he collided with the truck. In discussing the situation disclosed, this court said:

"From this record it is obvious defendant knowingly had been traveling in a cloud of dust which completely obscured his vision. It at least so completely obscured his vision that, in view of the speed of his car, he was unable to stop within the range of his vision. The general rule is well established that it is negligence as a matter of law for a motorist to operate his automobile on a highway at such speed that it cannot be stopped within the distance objects can be seen ahead of it. (*Chance v. Murry,* 143 Kan. 476, 54 P. 2d 981; *Berry v. Weeks,* 146 Kan. 969, 972, 73 P. 2d 1086; *Robinson v. Short,* 148 Kan. 134, 79 P. 2d 903; *Eldredge v. Sargent,* 150 Kan. 824, 832, 96 P. 2d 870, and cases therein cited.)" (L. c. 344.)

After calling attention to exception to the general rule, the court said further:

"He deliberately proceeded to travel in this heavy cloud of dust and was still traveling at the rate of forty-five miles per hour when he reached the brow of the hill. His own testimony discloses that on the brow of the hill the entire road was covered with a cloud of dust and the dust continued to thicken. Notwithstanding the fact defendant could not see what was ahead of him, he continued 322 feet further and at a speed of between thirty and forty miles per hour. At that speed he was proceeding blindly. His vision was not suddenly obscured. He knowingly drove blindly at that speed and knowingly exposed himself to the dangers which might lie before him." (L. c. 345.)

And on page 346:

"Defendant's evidence in the instant case clearly discloses he did not exercise ordinary care for his own protection."

In *Chance v. Murry,* 143 Kan. 476, 54 P. 2d 981, 12 JBK 190, plaintiff drove through mist and drizzle and sustained injuries in a collision with another car. He recovered a judgment and on appeal defendant's demurrer to his evidence was considered. The rule that one is negligent who drives his car in such a manner that he cannot stop or turn within the distance he could see was applied and the judgment was reversed.

Application of the rule stated was made also in *Harrison v. Travelers Mutual Cas. Co.,* 156 Kan. 492, 134 P. 2d 681, 12 JBK 191, 199, 204, 211, 241; *Curtiss v. Fahle,* 157 Kan. 226, 139 P. 2d 827, 12 JBK 191, 193, 195, 206; *Richards v. Chicago R. I. & P. Rly. Co.,* 157 Kan. 378, 139 P. 2d 427; and *Slaton v. Union Electric Ry. Co.,* 158 Kan. 132, 145 P. 2d 456. And those interested will find in all

of the cases above mentioned citation of many other cases where the rule has been applied in a variety of circumstances.

While it is true in the instant case the plaintiff did not run into an obstruction such as a parked vehicle nor collide with an oncoming vehicle, nor run into a defect in the highway, she did proceed along the highway when she could not see where she was going with the result that she lost her sense of direction and drove off the highway and into the place of danger where she was injured. Under the decisions above mentioned the legal cause of her injuries was her own negligence.

Appellee contends further, however, that even though she was negligent, her negligence cannot avail the defendants who were guilty of gross and wanton negligence. (*Railway Co. v. Baker,* 79 Kan. 183, 98 Pac. 804, 21 L. R. A., n. s., 427; *Jacobs v. Railway Co.,* 97 Kan. 247, 253, 154 Pac. 1023; L. R. A. 1916D 783; Ann. Cas. 1918D 384.)

Before discussing what constitutes gross and wanton negligence, it may be well to observe that the use of those words standing alone is a mere conclusion (*Blosser v. Wagner,* 144 Kan. 318, 59 P. 2d 37) and that their use does not strengthen the facts alleged (*Root Grain Co. v. Livengood,* 151 Kan. 706, 100 P. 2d 714) and if the petition alleges gross and wanton negligence, it is by reason of facts showing gross and wanton negligence. (*Fabac v. St. Louis & S. F. Rly. Co.,* 119 Kan. 58, 237 Pac. 1019; *Stout v. Gallemore,* 138 Kan. 385, 26 P. 2d 573, 3 JBK 37, 4 JBK 170.) Notwithstanding the fact the legislature used the words "gross and wanton negligence" in our automobile guest statute (G. S. 1935, 8-122b) our decisions have noted the essential difference between negligence and wantonness, as is shown by the reviews made in a number of our decisions. (See *e. g., K. P. Rly. Co. v. Whipple,* 39 Kan. 531, 18 Pac. 730, and *Stout v. Gallemore,* supra.) As is disclosed in the last mentioned case, degrees of negligence were taken out of the law in this state by the decision in *Railway Co. v. Walters,* 78 Kan. 39, 96 Pac. 346. We are therefore concerned now with whether the allegations of the petition charged the defendants with wanton conduct.

What is wanton conduct or wantonness? Limits of space and time preclude reference to every decision of this court which may throw light on the answer.

In *Railway Co. v. Baker,* 79 Kan. 183, 98 Pac. 804, 21 L. R. A., n. s., 427, it was said that misconduct of the enginemen on a railroad

train might amount to recklessness and wantonness so as to cut off the defense of contributory negligence, although they did not know of the presence.of the person injured, if to their knowledge the extent to which a certain street was used made an injury so probable they must be deemed to have realized its imminence and to have refrained from taking steps to prevent it because they were indifferent to whether it occurred or not.

In *Fabac v. St. Louis & S. F. Rly. Co.*, supra, it was said:

"It is true a petition must state facts sufficient to constitute a cause of action. If the cause of action be failure to exercise such reasonable care as would be expected of an ordinarily prudent and careful person under the circumstances, the petition must exhibit it. If the cause of action be wantonness, the petition must exhibit wantonness. This results from the distinction between negligence and wantonness recognized in *K. P. Rly. Co. v. Whipple,* 39 Kan. 531, 18 Pac. 730, and fully elucidated in the Baker case, *supra,* which is a leading authority on the subject. According to the Baker case, failure to exercise due care toward one discovered in a position of peril is not wantonness; it is negligence; that is, it is failure, without purpose or equivalent of purpose to injure, to use diligence, to act quickly, to employ means which might have been employed to avert injury. To constitute wantonness toward one discovered in a position of peril, there must be will to injure, or there must be such indifference to consequences, with realization that catastrophe is imminent, as to amount to willingness to injure. However, the court holds that if an engineer operating a switch engine sees a Ford truck in a position of danger, fails to stop the engine to prevent collision, or fails to check the speed of the engine to allow the truck to extricate itself, and carelessly and negligently runs into the truck, the statement of those facts, without more, constitutes wantonness on the part of the engineer." (L. c. 63.)

In *Stout v. Gallemore,* supra, the question was liability under the automobile guest statute, and the review there made of the Baker case and the Fabac case, *supra,* and other cases and authorities, will not be repeated. The court held that the use of the word "wanton" as used in that statute meant something different and distinct from negligence and that "wantonness" had not been established.

*Koster v. Matson,* 139 Kan. 124, 30 P. 2d 107, involved an automobile accident occurring in Nebraska and in which plaintiff pleaded the automobile guest statute of Nebraska. We shall not review the facts or the discussion of law in the decision further than to quote the following:

"In this state, and apparently in Nebraska, reckless or wanton conduct differs not in degree but in kind from negligent conduct, and such a thing as wanton 'negligence' cannot exist. If the conduct be wanton, it is not negli-

gent. If it be negligent, it is not wanton. Reckless or wanton conduct also differs from intentional conduct, because intent to injure is not present. However, in this state, for the practical purpose of an action for damages, recklessness or wantonness puts the wrongdoer in the same class with a willful wrongdoer." '(L. c. 128.) (Quotation from *Railway Co. v. Lacy,* 78 Kan. 622, 629, 97 Pac. 1025, is cited in support.)

In *Jacobs v. Railway Co.,* supra, plaintiff sought damages for the death of her husband. To avoid a defense of contributory negligence, it was charged the conduct of the defendant was wanton. After making reference to certain cases, the opinion continued:

"In *U. P. Rly. Co. v. Mitchell,* 56 Kan. 324, 43 Pac. 244, this court approved an instruction which defined reckless conduct as an indifference to the rights of others, an indifference whether wrong is done or not; and which told the jury that the defendant could be held liable only for injuries inflicted which were willful, wanton, or malicious, or which were so grossly negligent as to amount to wantonness. Many of our courts hold that wantonness precluding a defense of contributory negligence can not be predicated on the omission of a duty before the discovery of a person in a position of peril on a railroad track. (Note, 21 L. R. A., n. s., 427, 442)" (L. c. 254.)

From the above cases and those cited therein, it may be concluded that as to injuries inflicted, wanton conduct or wantonness comes between negligence on the one hand and willful or malicious misconduct on the other; that it is more than negligence and less than willfulness, and to constitute wantonness the acts complained of must show not simply lack of due care, but that the actor must be deemed to have realized the imminence of injury to others from his acts and to have refrained from taking steps to prevent the injury because indifferent to whether it occurred or not. Stated in another way, if the actor has reason to believe his act may injure another, and does it being indifferent to whether or not it injures, he is guilty of wanton conduct.

Reviewing the allegations of the petition very briefly, the Cities Service is charged with maintaining the ponds at the north end of its lease, in permitting inflammable basic sediment and refuse to remain therein, in permitting weeds and noxious vegetation to grow along the banks of the ponds and adjacent thereto, and in failing to construct fire guards. Sinclair is charged with setting out a fire when it knew or should have known it was likely to spread beyond its lease, in setting out the fire when a strong wind was blowing and in setting out the fire without taking precautions to prevent its spread beyond its lease. Both parties are charged with failure to give warning to the traveling public of the danger of using the high-

way after the fire had spread to the east pond or it had become apparent to them that it would so spread. These facts are not made any different in kind by the use of the formula heretofore quoted. Insofar as Cities Service is concerned, its ponds, with deposit of basic sediment and refuse, had existed in that condition since 1919. There is no allegation they had ever been afire or caused any injury to anyone. The fact they became afire in 1943 does not warrant any inference they were wantonly established, maintained or permitted to exist. The other allegations against Cities Service are charges of negligence and not of wantonness. Perhaps the charges against Sinclair savor more of wanton conduct, but even there the only charge is the setting out of fire when a strong wind was blowing. We do not think the allegations against Sinclair, however, warrant any inference in plaintiff's favor that the acts done made injury probable or that Sinclair must be deemed to have realized the imminence of peril and refrained from taking steps to prevent it, because indifferent to whether injury to a third person occurred or not.

In further support of the trial court's ruling on the demurrers, appellee argues that the liability of Cities Service is absolute without regard to whether its conduct was either negligent or wanton. Our attention is directed to and extensive quotation is made from *State Highway Comm. v. Empire Oil & Ref. Co.*, 141 Kan. 161, 40 P. 2d 355, in which it is stated that as long ago as 1917 this court adopted the general principle of liability without fault as stated in *Fletcher v. Rylands*, L. R. 1 Exch. 265, and that it still adhered to it. Reference is there made to *Berry v. Shell Petroleum Co.*, 140 Kan. 94, 33 P. 2d 953. We shall not discuss the doctrine at length. The general application made was that though the owner of a refinery, which is in itself a lawful business, operates it carefully, if he permit oil, refuse or dangerous substances to escape and flow over the lands of his neighbor, causing the neighbor material damage, his use of his refinery will be deemed unreasonable and constitute a nuisance, and he will be responsible for the damage. Under the doctrine liability does not spring from negligence but from failure to confine the dangerous substances. We are asked to extend the doctrine and apply it to the instant case. It may be observed that the present petition makes no allegation that any dangerous substances were permitted to escape. On the contrary, negligence is charged because they were confined in ponds adjacent to the highway. The

petition charges negligence, and not a state of facts where the doctrine would apply. But were an attempt made to apply it, it could only be done by ignoring the many allegations of negligence and by importing facts stated in argument but either lacking or doubtfully stated in the petition. Under such circumstances the nature of the charge would be uncertain. The rule is that a petition cannot be upheld against a general demurrer unless it fairly states a cause of action upon some definite theory without resort to inferences. or the construction of doubtful language. See *Lofland v. Croman*, 152 -Kan. 312, 103 P. 2d 772, *Frogge v. Public Service Co.*, post, p. 687, and cases cited. We conclude that the state of facts alleged in the petition affords no ground for extension of the doctrine, even though we were of opinion it ought to be extended. If it be assumed the facts alleged warranted any application of the doctrine, we would have to say the petition did not fairly state a cause of action upon a definite theory without resort to inferences or the construction of doubtful language and was demurrable for that reason.

In view of what has been said, it is not necessary we discuss other matters presented in the briefs.

The ruling of the trial court on the demurrers is reversed.

SMITH, J., dissents.