No. 41,117

FRED E. LUTZ and PEARL LUTZ, *Appellees*, v. INDEPENDENT CONSTRUCTION CO., INC., *Appellant*.

(332 P. 2d 269)

Opinion filed December 6, 1958.

*Leonard A. O'Neal,* of Kansas City, Missouri, argued the cause, and *Wilfred Wimmell,* of Kansas City, Missouri, and *Howard Payne,* of Olathe, were with him on the briefs for the appellant.

*Thomas E. Gleason,* of Ottawa, argued the cause, and *Douglas Gleason* and *Jules V. Doty,* both of Ottawa, and *Hollis B. Logan,* of Topeka, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: This is an action by landowners for damages arising out of the alleged negligent operation of defendant's hot-asphalt plant.

The amended petition (hereafter referred to as petition) seeks both actual and punitive damages. Defendant's demurrer to each cause of action on the ground that each fails to state facts sufficient to constitute a cause of action in favor of plaintiffs and against defendant was overruled, and it has appealed. The sole question presented is the correctness of that ruling.

Briefly summarized, the first cause of action (pertaining to actual damages) of the petition alleges the following:

At all times material, plaintiffs were the owners of and resided upon their eighty-acre farm near Ottawa in Franklin county. In the spring of 1955 defendant company, in connection with a contract held by it for the construction and resurfacing of certain highways in Franklin and Douglas counties, installed and commenced to operate a hot-asphalt plant for the manufacture of paving material. The plant was located approximately 2,000 feet directly south of plaintiffs' house and approximately 150 feet from the south line of their farm. From April until November of 1955 defendant operated its plant eight to ten hours per day except on Saturday afternoons and Sundays. Vast quantities of limestone dust were emitted by the plant to heights of from 50 to 150 feet, thus permitting the prevailing south winds to carry the powdery dust over and onto plaintiffs' farm land and dwelling, making life generally unbearable for them and resulting in various items of damage, such as expense of employing outside help to harvest a crop of oats and lespedeza due to the asthmatic condition of plaintiff husband; damage to the two mentioned crops as the result of being coated with limestone dust; injury to eight acres of pasture which was so coated with dust

from the plant that plaintiffs' cattle refused to eat the grass; damage to alfalfa which was partially destroyed by the coating of dust, and injury to three milk cows with resulting decrease in the amount of milk plaintiffs were able to sell due to the general condition of the farm.

It is further alleged that all during the period in question great clouds of powdery limestone dust were negligently blown from defendant's plant and fell incessantly upon plaintiffs' dwelling, garage, chicken house, barn and yard; that despite all reasonable protective measures taken by plaintiffs the dust penetrated and seeped into the dwelling and other buildings, greatly interfering with and inconveniencing plaintiffs in their occupancy of the house and use of the other buildings in that it was impossible for them to maintain the house in a clean, sanitary and livable condition; that the dust penetrated the kitchen cupboards, clothes closets, storage areas for food, clothing and other personal property, covering dishes, bed linens and clothing; that due to defendant's negligence and wanton disregard for the rights of others plaintiffs were forced to do their family laundry on Saturday afternoons or Sundays when the plant was shut down, and that the dust even clogged the mechanism of the family clock on the mantle so that it would not run and required professional cleaning—all of the aforesaid resulting in actual damages in the sum of $1,997.50, for which recovery is sought.

The specific acts of negligence with which defendant is charged are as follow:

"(a) Defendant, through its duly authorized employees and agents, did install, maintain, and operate its 'hot-mix plant' in a place from which defendant could reasonably foresee and expect that the prevailing breezes would carry dust into plaintiffs' property; to wit: Defendant through its duly authorized employees and agents did install, maintain, and operate its 'hot-mix plant' directly south from plaintiffs' farm and dwelling at a distance of approximately 2,000 feet from plaintiffs' dwelling and at a distance of approximately 150 feet at the nearest point from plaintiffs' farm land; and in an area in which defendant's employees and agents knew or should have known was subject to prevailing southerly breezes during the spring, summer, and fall months; with knowledge on the part of defendant's duly authorized employees and agents that the 'hot-mix plant' when so maintained and operated would cause clouds of lime dust to be blown into the air from heights of 50 to 150 feet, which dust could and should have been foreseen by defendant's duly authorized agents and employees would be carried onto and into plaintiffs' farm land, dwellings, improvements, household goods, and other personal property.

"(b) Defendant, through its duly authorized employees and agents, operated its 'hot-mix plant' without adequate dust collectors or similar devices which would have prevented unreasonable quantities of lime dust from blowing onto and into and damaging plaintiffs' property."

For their second cause of action (pertaining to punitive damages) plaintiffs incorporate therein the allegations of the first cause of action, except those pertaining to specific items of actual damage, and further allege:

". . . that the actions of defendant, through its duly authorized agents and employees, were willful, wanton and malicious; and were continued through a period of 8 months with full knowledge and awareness on the part of defendant of the damages being continually inflicted upon plaintiffs; and that such actions are of such nature that punitive damages ought to be awarded.

"Wherefore, plaintiffs on their second cause of action pray judgment for $10,000.00 punitive damages making a total of $11,997.50 on both causes of action; for the cost of this action and for such further relief as to the court may seem just and proper."

In support of its position the demurrer should have been sustained as to the first cause of action, for actual damages, defendant directs our attention to the fact the action is one for damages based on negligence rather than to abate a nuisance; that plaintiffs apparently seek to impose the ancient and outmoded doctrine of "absolute liability" against a perfectly legitimate business operation being carried on in a rural area in a legitimate manner; that under the prevailing and modern rule (including Kansas) one is not an "insurer" against injury to his neighbor's property, and that in the absence of negligence there is no liability if the undertaking is legitimate and the use thereof is reasonable; that nowhere in the petition are specific facts pleaded which constitute negligence, and that the allegation as to the inadequacy of the dust collectors is a mere conclusion in the nature of an attempt to impose upon defendant the obligation and duty to use the best and latest devices and appliances, which the law does not impose or require.

Plaintiffs, on the other hand, concede the basic question is one of negligence, but contend their petition sufficiently alleges the duty owed by defendant to exercise reasonable care in the operation of its plant and a breach of that duty insofar as they are concerned.

A number of decisions of this and other courts are referred to by the parties, among them being *Hofstetter v. Myers, Inc.,* 170 Kan. 564, 228 P. 2d 522, 24 A. L. R. 2d 188, which was an action to abate a nuisance. That case reached here after a full trial below, and,

in passing, it should be noted that the trial court specifically found (finding 28, p. 567) the defendant had not been guilty of negligence in the operation of its hot-asphalt plant.

Resort to the decisions involving similar questions points up the fact that in the last analysis each case has been decided on its own particular facts and circumstances, and that, in the nature of things, it is impossible to lay down general rules of law applicable to all situations.

While we are in general accord with the above-mentioned principles of law urged by defendant, we nevertheless feel that, from the standpoint of *pleading*, defendant does not give to the allegations of this petition the full import and weight to which they are entitled. Without repeating the portions of the petition above quoted, we call attention to allegations that defendant knew, or should have known, that its operations would cause clouds of dust to be blown on plaintiffs' property, and that the plant was operated without adequate dust collectors or similar devices which would have prevented *unreasonable* quantities of lime dust from blowing onto and damaging plaintiffs' property. Whether plaintiffs will be able to *prove* negligence on the trial of the case of course remains to be seen—but we feel compelled to agree with the trial court's action in overruling the demurrer to the cause of action seeking actual damages.

With respect to the second cause of action, seeking punitive damages, defendant contends the use of the words "willful, wanton and malicious" amounts merely to a conclusion of the pleader, and that the allegations fall far short of stating a cause of action for punitive damages.

Plaintiffs, on the other hand, contend for the principle that to inflict damage on one's neighbor by causing unreasonable quantities of dust to be blown onto his property constitutes actionable negligence, and that to continue to throw unreasonable quantities of dust at one's neighbor over a period of months, knowing that he is being damaged, constitutes wanton conduct for which the neighbor may recover punitive damages, citing *Kniffen v. Hercules Powder Co.*, 164 Kan. 196, 188 P. 2d 980, the third paragraph of the syllabus of which holds that in an action to recover damages on the theory of willful and wanton conduct it is essential that the actor shall have realized the imminence of injury to others from his acts and that

he refrained from taking steps to prevent the injury because of his indifference to the consequences. (See also *Frazier v. Cities Service Oil Co.,* 159 Kan. 655, 157 P. 2d 822, syl. 5.)

Tested by the rule laid down in the two mentioned cases, it is our opinion that the allegations with respect to punitive damages are sufficient to withstand the demurrer, and that as to the second cause of action the demurrer was properly overruled.

The judgment of the trial court is therefore affirmed.