Gigoux v. Henderson.

No. 22,687.

J. F. GIGOUX, *Appellant,* v. JOHN HENDERSON, *Appellee.*

SYLLABUS BY THE COURT.

1. NOTE—*Holder in Due Course—Notice of Infirmity—Bad Faith Must Be Shown.* The rule is followed that in order to charge the purchaser and holder of a promissory note before maturity, with notice of infirmity or fraud in its procurement, bad faith must be shown.

2. SAME—*Erroneous Instruction—New Trial.* When the record shows an erroneous instruction which may and probably did mislead the jury, it cannot be said that substantial justice has been done; and the rule against reversal for immaterial error does not apply.

3. SAME—*Excluded Evidence—Not Produced on Motion for New Trial.* Oral testimony touching a certain director's resolution should, under the showing made, have been admitted, but as it was not produced in support of the motion for a new trial it cannot be considered.

Appeal from Sumner district court; OLIVER P. FULLER, judge. Opinion filed July 10, 1920. Reversed.

*Paul Brown, Silas S. Brown,* both of Wichita, *Horace W. Danforth,* and *William P. Kavanagh,* both of Denver, Colo., for the appellant.

*W. W. Schwinn* and *W. H. Schwinn,* both of Wellington, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued to recover on a promissory note, and appeals from an adverse judgment. The defendant suggests that owing to the dates and the forms of notices of appeal the plaintiff has mistaken the date of the judgment, but from the journal entry it appears that the verdict was returned and the judgment entered on February 19, 1918. The motion for a new trial was filed two days later, and overruled on May 27, 1919, and the notices of appeal are sufficient to bring before us this ruling. That motion included certain alleged errors occurring at the trial, and these are properly before us for consideration.

The plaintiff, having been a farmer, freight handler, railroad and stationary engineer, and having helped build some

stockyards, became a freight clerk and checker at Greeley for the Denver, Laramie and Northwestern Railway Company. This company, with several incorporated subsidiary concerns, seemed to be engaged in an attempt to build and operate a railroad and float its stock, and especially to raise money therefor. The plaintiff knew a Mr. Johnson who seemed to be the head of all these companies and the active manager of all the enterprises involved, and who made speeches intended to inspire confidence in the success of the desired operations. Mr. Johnson succeeded in inducing the plaintiff to lend $6,000 in all, upon his express statement—

"That it was needed to help carry the railroad through to Severence or Black Hollow, . . . this would enhance the value of the Realty Company and the stock of the other companies."

For the loans making up this amount he took notes signed by a constituent company called the Denver, Laramie Realty Company. Those notes were secured by collateral belonging partly to the Realty Company and partly to the Land and Iron Company. He testified that he could have had the note of any one of the companies, but he went to Johnson, who told him to take one of the Realty Company's because he was a stockholder in it. The collateral notes taken as security were made to the Land and Iron Company by a man named Failing, a stockholder living in Denver, and indorsed by Johnson. The latter called the plaintiff over the 'telephone and asked him to come to Denver as he thought he would be able to settle up on the notes. The plaintiff went, taking his notes along, expecting payment. When he arrived he was informed by Johnson that he had learned that the Failing notes were of no value, but that he had some gilt-edged paper which he would like plaintiff to take and make another extension. This paper was signed by a man named Henderson, whom the plaintiff knew. A new note for $6,000, due in ninety days, was made out, and Henderson's notes as collateral were taken in place of the Failing notes. The Failing notes were good and were shortly thereafter paid.

When the Henderson note sued on herein became due the plaintiff brought suit, alleging that he had bought this note before maturity, indorsed by the payee, the Denver, Laramie and Northwestern Railroad Company, by Johnson, president.

The defendant denied that the plaintiff paid anything for it, that he was a holder in due course or a *bona fide* holder, and alleged that its consideration had entirely failed, that it was executed to the railroad company under an agreement that it should not be used for any other purpose than the extension of the railroad, which road had violated its agreement. On the trial counsel for the plaintiff stated that they were not trying to say a good word on behalf of the railroad company or any of the allied companies—

"We are not here to make a brief for their rascality. It stands unique and alone in history."

But it was asserted that the plaintiff had no knowledge of any promise or agreement made to Henderson or as to how his note was obtained.

A companion case was before this court in *Gigoux v. Moore,* 105 Kan. 361, 184 Pac. 637, where a vivid picture of the enterprise may be found and where some of the matters presented here were finally determined.

Numerous errors are assigned upon the trial court's rulings as to the evidence, and instructions given and refused, but in view of what was said in the former decision it is deemed unnecessary to take all these matters up at length at this time.

The plaintiff's chief contention is that the court erred in instruction No. 4, which was to the effect that the burden of proof was upon the plaintiff to prove his right to recover, and that before the jury would be warranted in finding for him they must believe that upon the 13th day of September, 1911, the railroad company was indebted to the plaintiff upon a loan to it in the sum of $6,000, and that he surrendered certain securities which he held as collateral to such indebtedness, and took certain other collateral, including the note sued on. The fault found with this part of the instruction is that the indebtedness was literally that of the realty and not of the railroad company, but we think the evidence made it so plain that the various concerns involved went upon the theory of the three guardsmen, "All for one, and one for all," that no material harm was done by this expression, for so far as the plaintiff's debt was concerned it was owed by the railroad company for the money borrowed for its benefit.

But further complaint is made of the same instruction charg-

ing that the jury must also find that at this time the plaintiff had no knowledge that the note sued on was procured by fraud or that the defendant had any lawful defense to it—

"or that he had any information that would put a reasonable, ordinary and prudent person upon inquiry in reference thereto. And in the event that you so find, then you are instructed that it would be your duty to find for the plaintiff the full amount of said note, . . . and unless you so find, your verdict must be for the defendant."

This, in substance, told the jury that unless they should find that the plaintiff had no such information as to put a reasonable and prudent person upon inquiry they could not find in his favor. It was made clear in the former opinion that, as in cases of notice of some infirmity in the instrument, bad faith in fact is required, and that mere failure to use ordinary diligence to follow up suggestive facts, or facts arousing suspicion, is not sufficient. (*Gigoux v. Moore,* supra. See, also, *Bank v. Reid,* 86 Kan. 245, 120 Pac. 339, and *Leavens v. Hoover,* 93 Kan. 661, 145 Pac. 877.) This complaint is met by the suggestion that in instruction No. 5 the court correctly gave the law and told the jury that the plaintiff could not be chargeable for failing to make inquiry unless he had knowledge of some defect, or had such knowledge in taking the note at such time as would amount to fraud. But after giving this instruction, No. 6 was given by the court, using this language:

"From the admission in this case there never was a time when the railroad company could have forced the collection of this note. But if the plaintiff has established the fact by a preponderance of the testimony, as defined to you in instruction number 4, he would have the right to recover regardless of the fact that the railroad company could not recover on the note. The plaintiff is not bound by any representations, private understanding or agreements of which he had neither notice nor knowledge."

This is practically a reiteration of instruction No. 4, and there is nothing whatever in the record to indicate that the jury were not led astray by the charge thus erroneously given. Under these circumstances it cannot be said that substantial justice has been done—which means a fair trial to each of the parties—and the rule against reversals for immaterial error does not apply. (*Dotson v. Railway Co.,* 81 Kan. 816, 106 Pac. 1045; *Triplett v. Feasel,* 105 Kan. 179, 182 Pac. 551.)

It was sought to be shown by oral testimony that a resolution had been passed authorizing the assets of one company to

be used as security for obligations of any other. An objection was sustained on the ground that it was not the best evidence, although it was testified that no such resolution could be found. It would have been proper to show this by parol. (*Gillett v. Comm'rs of Lyon Co.,* 18 Kan. 410; *C. K. & W. Rld. Co. v. Comm'rs of Stafford Co.,* 36 Kan. 121, 12 Pac. 593; 14 C. J. 376, § 491; 17 Cyc. 504), but as the evidence was not presented on the hearing of the motion for a new trial, it cannot be considered now. (Civ. Code, § 307, Gen. Stat. 1915, § 7209; *Collins v. Morris,* 97 Kan. 264, 155 Pac. 51.)

The judgment is reversed, and the cause is remanded for further proceedings in accordance herewith.