No. 41,650

ARCHIE V. JOHNSON, Administrator of the Estate of Dora Gile, Deceased, *Appellee*, v. MAYNARD E. HUSKEY, *Appellant*.

(350 P. 2d 14)

Opinion filed March 5, 1960.

*Horace A. Santry,* of Salina, argued the cause, and *Joseph B. Crowther,* of Salina, was with him on the briefs for the appellant.

*Arthur C. Hodgson,* of Lyons, argued the cause, and *Raymond E. Haggart,* of Salina, was with him on the briefs for the appellee.

The opinion of the court was delivered by

JACKSON, J.: The appellee brought an action in the court below under the provisions of the wrongful death act (G. S. Supp. 1957, 60-3203) against the appellant alleging that appellant was responsible for the death of Dora Gile. After a trial before a jury, the district court approved a verdict in appellee's favor in the sum of $5,000, and rendered judgment thereon. Appellant seeks relief from the judgment by appeal to this court.

At the time of her death, Dora Gile was riding in an automobile driven by the defendant, and it is admitted by all parties that she occupied the status of a guest under the so-called guest statute (G. S. 1949, 8-122b). The learned trial judge conducted a pretrial conference, and there were only a few questions left for the jury's decision and still fewer now raised upon this appeal.

The first contention made by the defendant before this court seems to be to the effect that the trial court erred in not sustaining defendant's motion for a directed verdict at the close of the evi-

dence. The question so raised is whether or not the evidence produced at the trial was sufficient to go to the jury upon the issue of "gross and wanton negligence" under the guest statute.

Defendant quite adequately states the rule which applies in testing evidence as to a motion for directed verdict by citing *Missouri Pacific Rld. Co. v. Richards*, 158 Kan. 178, 146 P. 2d 359, We shall paraphrase the rule to fit this case as follows: If on all of the evidence adduced the admitted facts would compel a verdict in defendant's favor, the motion should have been sustained. If, however, the facts as shown by the evidence, when favorably considered, might reasonably be thought to show "gross and wanton negligence" as those terms are defined, then the motion should be overruled and the case submitted to the jury. It is, of course, the same rule passed upon by a court upon a demurrer to the evidence. The question is should the evidence be taken from the jury as a matter of law, or is there a question of fact to be decided by the jury?

We shall briefly recount the facts leading up to the fatal accident. Dora Gile lived in the small town of Marquette, and on the evening of April 14, 1956, she and several other young women procured a ride to Salina, where they attended a dance. At about midnight after the dance was over, the young women went to an eating place for hamburgers and coffee. One of the girls seems to have arranged for Dora Gile, Carolyn Kay Fruit and Carolyn's sister, Wanda Burger, to ride back to Marquette with defendant and two other young men. All of the young men were airmen stationed at Smoky Hill Air Base.

The party started out in defendant's car with defendant driving and one of the girls sitting beside him in the front seat. The two other couples were in the back seat. Defendant drove south on U. S. 81 and there can be no question but that he was driving fast. About three and one half miles south of Salina, defendant came up to two cars also proceeding south. He passed the first car by going out into the east lane of traffic and then came back to his own south bound lane, but he found that he was traveling too fast to slow down before hitting the second car which was going south as he was. He tried to go out around again, but saw another car coming north in the east lane and allowed his car to go over on to the east shoulder, then it crossed the ditch, went out into the field where it is shown the ground was soft. The car turned over at

least twice and the body of Dora Gile was thrown thirty-eight feet beyond where the car came to rest.

Very shortly after the wreck, two troopers of the state highway patrol and a member of the air patrol from the air base were on the scene. Troopers Nelson and Smith and Airman Lassner, all testified at the trial that they were conversant with the actions of and had dealt with intoxicated people; that in their opinion defendant was intoxicated, and explained his actions to the jury. A nurse at the hospital testified that she could tell that defendant had been drinking. Defendant consented to have a sample of his blood taken at the hospital. A proper test of defendant's blood showed a result of 0.275 per cent of alcohol by weight. At the trial, a competent physician testified that a test of 0.15 would be evidence of intoxication; that considering defendant's test showed 0.275, defendant was definitely under the influence of intoxicating liquor. The statute was not referred to in this case, but reference may be had to the provisions of G. S. Supp. 1957, 8-1005 in comparing the authenticity of the above testimony.

Troopers Smith and Nelson testified about the scene of the accident. Trooper Nelson had been promoted to Lieutenant at the time of the trial. They examined the tire marks on the pavement, on the shoulder to the east, across the ditch and across the field. There were sixty-five feet of tire and stress marks on the pavement finally going off in an arc to the east. The testimony was that the car had traveled 380 feet from the time the brakes were applied on the pavement until it came to rest after turning over at least twice. Lieutenant Nelson, after stating facts which the court ruled were sufficient to qualify him, gave as his expert opinion that defendant was traveling "at least" eighty miles per hour when he first applied his brakes behind the car in front of him on the pavement and found he could not slow down enough to avoid hitting the other car which was proceeding in the same direction. Defendant's objections to this opinion will be considered, *infra*, but upon the motion to direct a verdict in defendant's favor this evidence was a part of the case.

The terms "gross and wanton negligence," as used in the guest statute, have been defined by many of our prior decisions. In *Long v. Foley*, 180 Kan. 83, at page 89, 299 P. 2d 63, the court said:

"The yardstick to be used in determining whether the facts of a given case constitute 'gross and wanton negligence,' within the meaning of that term as used in such statute, is no longer an open question in this jurisdiction and it will not be necessary to cite all the cases dealing with the subject. However, it can be

said the tests to be applied in determining such a question are no different in jury cases than in those where the sufficiency of pleadings are involved. Such rules are well stated in *Bailey v. Resner*, 168 Kan. 439, 214 P. 2d 323, frequently cited in later decisions, where the following appears:

" 'By many previous decisions of this court the phrase "gross and wanton negligence" has been held to mean "wantonness" (*Stout v. Gallenmore*, 138 Kan. 385, 26 P. 2d 573; *Frazier v. Cities Service Oil Co.*, 159 Kan. 655, 664, 157 P. 2d 822, and cases cited therein; *Elliott v. Peters*, 163 Kan. 631, 635-6, 185 P. 2d 139).

" 'What is wantonness and how should it be defined? This court has defined it in nearly a score of cases since the enactment of the guest statute in 1931 (citing cases), and it may be said that the sum total of these definitions expounded in the past amounts to this—a wanton act is something more than ordinary negligence, and yet it is something less than willful injury; to constitute wantonness, the act must indicate a realization of the imminence of danger and a reckless disregard and complete indifference and unconcern for the probable consequences of the wrongful act. It might be said to include a willful, purposeful, intentional act, but not necessarily so; it is sufficient if it indicates a reckless disregard for the rights of others with a total indifference to the consequences, although a catastrophe might be the natural result.

" 'The term "wantonness" or "wanton conduct" has been defined by this court in cases other than those involving the guest statute (G. S. 1935, 8-122b), and it is difficult to find a more adequate definition of the term than is found in one such case—*Frazier v. Cities Service Oil Co.*, supra, at page 666:

" '. . . it may be concluded that as to injuries inflicted, wanton conduct or wantonness comes between negligence on the one hand and willful or malicious misconduct on the other; that it is more than negligence and less than willfulness, and to constitute wantonness the acts complained of must show not simply lack of due care, but that the actor must be deemed to have realized the imminence of injury to others from his acts and to have refrained from taking steps to prevent the injury because indifferent to whether it occurred or not. Stated in another way, if the actor has reason to believe his act may injure another, and does it being indifferent to whether or not it injures, he is guilty of wanton conduct.' " (pp. 441, 442.)

The opinion in the Long case continued with the citation of many other cases to the same effect. In the even more recent case of *Perry v. Schmitt*, 184 Kan. 758, 339 P. 2d 36, the court again approved the above definitions of "gross and wanton negligence," and further approved the verdict finding wanton conduct had existed where the facts showed defendant had voluntarily driven at a very high and excessive rate of speed in the nighttime on a highway where it was probable that other vehicles would be encountered and after defendant had voluntarily allowed himself to become intoxicated. The facts in the Perry case are not too dissimilar from the facts in the case at bar. We are convinced that the facts shown in the evidence in this case, taken together as a whole, were amply

sufficient to be submitted to the jury and sufficient to support the jury's verdict against the defendant.

In defendant's brief we find the statement to the effect that if the motion for directed verdict cannot be sustained, then defendant's motion for judgment notwithstanding the verdict should be sustained. The meaning of such statement is not apparent under our civil code of procedure. We know of no case in this jurisdiction, and defendant cites none, holding that such a motion can be thought to reach the sufficiency of the evidence before a jury. We direct attention to the cases of *Ogilvie v. Mangels*, 183 Kan. 733, 322 P. 2d 581; and *In re Estate of Rogers*, 184 Kan. 24, 334 P. 2d 830.

The only other issue raised in defendant's brief is as to the admissibility of the testimony of Lieutenant Nelson. Nelson testified as shown above that in his opinion defendant had been driving "at least eighty miles per hour" at the time he first put on his brakes when his car was in the west lane of the highway pavement.

Perhaps, it should be noted that the case of *Foreman v. Heinz*, 185 Kan. 715, 347 P. 2d 451, had not been published when the defendant's brief was filed with this court. The first paragraph of the syllabus of the Foreman case reads:

"In a civil action for damages arising out of an automobile collision, provided a proper foundation is laid, a witness qualified as an expert may give his opinion, based upon the length of skid marks, location of vehicles, damages to vehicles and independent tests, as to the speed of an automobile involved in the collision, the weight to be given such evidence, of course, being a matter for the jury to determine."

In view of the rule of the Foreman case, it appears that the only question remaining as to the admissibility of the Nelson testimony would be as to the foundation laid to qualify the witness as an expert. The Lieutenant testified that at the time of the accident he had had more than sixteen years of service and experience in the state highway patrol; that he had investigated many automobile accidents; that he had read and studied the literature published by the Northwestern University's traffic institute relative to arriving at the speed of automobiles from observation of skid marks, distance traveled, damage to and locations of wrecked vehicles. Nelson had been at the scene of the accident and assisted Trooper Smith in measuring distances and making the highway patrol report of the accident. There can be little doubt but that under the above rule the trial court was justified in allowing Lieutenant Nelson to testify

as an expert. The weight of his testimony and of the opinions expressed were for the jury.

After considering all of the matters raised by the defendant and the record brought before this court on the appeal, we are compelled to conclude that the judgment of the trial court must be affirmed. It is therefore so ordered.