No. 41,963

Charles C. Horn, *Appellant*, v. Chicago, Rock Island & Pacific Railroad Company, and L. D. Bannister, *Appellees*.

(357 P. 2d 815)

Opinion filed December 10, 1960.

*Wayne Coulson*, of Wichita, argued the cause, and *Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Robert J. Hill, Gerrit H. Wormhoudt, Philip Kassebaum, John E. Rees, Robert T. Cornwell*, and *Willard B. Thompson*, all of Wichita, were with him on the brief for the appellant. *Hugo T. Wedell* and *Homer V. Gooing*, of Wichita, of counsel.

*Clayton M. Davis*, of Topeka, argued the cause, and *Mark L. Bennett*, of Topeka, and *Ralph M. Hope*, of Wichita, were with him on the brief for the appellees.

The opinion of the court was delivered by

Price, J.: This was an action to recover for personal injuries and property damage resulting from a collision of plaintiff's automobile and defendant railroad's passenger train. The engineer of the train also was joined as a defendant but for convenience they will be referred to in the singular.

Plaintiff appeals from an order sustaining a demurrer to his evidence.

The action was based—not on negligence—but solely on *wantonness*. During a discussion between court and counsel concerning the admissibility of certain evidence, counsel for plaintiff stated:

"This action is not an action for negligence . . . This is an action for wantonness . . . Our stated cause of action is wantonness . . . Now this petition nowhere contains an allegation in it that the defendants are guilty of negligence, this charges them with out and out wantonness. This is founded wholly on wantonness . . . We don't claim they are negligent or that this offers any proof of negligence."

Briefly, plaintiff's evidence established substantially the following:

At a point on a north-south black-top county highway about four or five miles north of the corporate limits of Wichita and about one-half mile south of the town of Kechi the highway is crossed by defendant's tracks. At the point in question the tracks run northeast-southwest, thus crossing the north-south highway at an "angle." At noon on September 13, 1956, plaintiff was driving north on the highway at a speed of about fifty miles per hour. He had been over the road before and knew the railroad crossing was ahead. As he approached it he decreased his speed to thirty-five or forty miles per hour. Although there were no electric signals at the crossing, he was aware of the fact that a train might be approaching at any time. It was windy and somewhat dusty, but visibility was about five miles. Approaching the crossing from the south there is a slight flat curve of four or five degrees to the west as the road nears and goes across the tracks. It then declines slightly to cross a highway bridge, curving easterly to resume the north and south direction. In other words, it may be said there is a slight "S-curve" right at the crossing. As plaintiff approached the crossing he looked both to the southwest and northeast but saw no train and heard no whistle. Just as he neared the crossing he saw defendant's train approaching from the northeast and "tried to beat it across the tracks." He did not succeed and a collision occurred. The train was traveling seventy-nine miles per hour— which speed was within the rules prescribed by the Interstate Commerce Commission and was not in violation of any statutory law. Plaintiff was severely injured and his car was demolished.

A number of photographs showing views of the crossing, highway and railroad tracks when approaching from the south were introduced in evidence and are included in the abstract and counter abstract in this appeal. While there appears to have been some discussion and question concerning whether they accurately portray the scene, nevertheless the then captain of the patrol division and present sheriff of Sedgwick county testified that they were accurate portrayals of what they purported to be. We have examined these photographs in detail, making full allowance for certain changes in highway markings, and so forth, made since the date of the collision. There can be no question but that on the date in question one approaching from the south, as did plaintiff, had an open view of defendant's track to the northeast for a distance

of one-eighth to one-half mile, and that one in his position was able to observe, at the same time, traffic on the highway and a train approaching from the northeast.

The evidence further disclosed that at the crossing the black-top highway was twenty-one feet wide, and that while the east shoulder of the highway south of the crossing was rather narrow there was ample room for a car to slow down or pull off to the right leaving only the left wheels on the surfaced portion. Further, the testimony showed that an average good driver could drive over the "curve" at the crossing at a speed of fifty-five miles per hour, although such speed would not be "exactly safe." It also should be stated that the engineer of the train saw plaintiff approaching the crossing but assumed that he was going to stop. There were no skid marks on the highway.

As before stated, the demurrer to plaintiff's evidence was sustained—resulting in this appeal.

Only two questions are presented—(1) the exclusion of certain evidence, and (2) the sufficiency of the evidence to make out a case of wantonness for submission to the jury.

In support of his case plaintiff attempted to introduce evidence of the fact that some thirteen days prior to his collision there had been another train-car collision at the same crossing, in which three persons were killed. It is contended that evidence of prior occurrences always is admissible to prove knowledge of a dangerous condition; that the admitted killing of three persons at the same crossing only thirteen days earlier was the strongest evidence possible of defendant's knowledge of and realization of imminence of danger at the crossing and an indifference on the part of defendant to the consequences of operating its train at a high speed under the circumstances.

Concededly, there are cases in which evidence of prior accidents is admissible, depending upon the facts and circumstances of the particular case, as is shown in the recent annotation on the subject at 70 A. L. R. 2d 167, where, at page 172, it is said:

"Subject to the general requirements of similarity of conditions, reasonable proximity in time, and avoidance of confusion of issues, the courts have generally recognized that evidence of the occurrence of a prior similar accident at the same place as the accident in suit has some tendency to establish a dangerous or defective condition at the place in question and may be admitted for this purpose, in actions where the dangerous condition of the place in question is at issue."

citing *Mo. Pac. Rly. Co. v. Neiswanger*, 41 Kan. 621, 21 Pac. 582, 13 Am. St. Rep. 304, which followed the holding in *City of Topeka v. Sherwood*, 39 Kan. 690, 18 Pac. 933.

At page 178 of the 70 A. L. R. 2d annotation, above referred to, appears the following statement:

"Evidence of prior similar accidents at the same place, offered to show the existence of a dangerous condition, has frequently been held inadmissible under the facts of a particular case because of the failure to satisfy the collateral requirements as to similarity of conditions and proximity in time. In addition, a few cases appear to have adopted a rule generally rejecting such evidence offered for this purpose, primarily because of the fear that the trial would be confused by the introduction of collateral issues."

And at page 198 of the same annotation appears the following:

"Evidence of prior accidents at the same place draws its pertinency from the basic principle that similar causes may be expected to produce similar effects, so that it is implicit in all the cases recognizing the propriety of receiving such evidence that the conditions operating to produce the accident have been substantially similar on the two or more occasions in question. The necessity of such substantial similarity has frequently been expressly recognized by the courts."

In support of the last-mentioned statement of the rule the case of *Bledsoe v. M-K-T. Rld. Co.*, 149 Kan. 741, 90 P. 2d 9, is cited, and, while factually dissimilar to the case before us, it nevertheless was said in the opinion:

"Plaintiffs further contend that whether a railroad crossing is unusually dangerous is a question of fact for the jury, . . . [citing]. This is true only when there is substantial, competent evidence that the crossing is unusually dangerous. Unless such evidence is produced the question is one of law for the court. (p. 747.)

. . . . . . . . . . . . . .

"Over defendant's objection plaintiffs were permitted to introduce certain evidence that at some previous time there had been a similar collision at this crossing. There was no showing of the circumstances of that collision, or as to whose fault it was. The fact that a collision occurred, standing alone, is insufficient to establish negligence of either of the parties involved [citing]. The evidence should not have been admitted, even on the theory that it tends to show the crossing to be an unusually dangerous one, for it is entirely possible that the collision was solely the fault of the driver of the motor vehicle involved." (pp. 747, 748.)

. . . . . . . . . . . . . .

During the discussion as to the admissibility of evidence of the collision occurring thirteen days prior to the one here in question it was brought out that the car involved in that collision was being driven by an airman stationed at the Salina Air Base, and that it

approached the crossing *from the north* and was struck by a train approaching *from the southwest*—circumstances just the *opposite* from those in the instant case. Further, there was no showing whether that collision occurred in the daytime or nighttime; whether the train involved was a freight or passenger train; what the speed of the train was claimed to have been, or as to the speed of the vehicle; and neither was there any showing as to traffic or weather conditions, the view of the driver, or any other facts or conditions showing any similarity to the collision here involved—other than the fact such collision occurred at the same crossing. The mere *fact* of the former collision was all that was offered to be proved.

We think that clearly, under all of the facts and circumstances, the evidence of the prior collision was properly excluded.

There remains the principal question in the case—whether plaintiff's evidence was sufficient to go to the jury. Irrespective how the first point (concerning the evidence of the prior collision) be decided—plaintiff contends that it was sufficient and that the demurrer was erroneously sustained.

As before stated, this action was based solely on *wantonness*. The reason is of course obvious, as contributory negligence, if it existed, is not a defense to wantonness. (*Frazier v. Cities Service Oil Co.,* 159 Kan. 655, syl. 4, 157 P. 2d 822; *Kniffen v. Hercules Powder Co.,* 164 Kan. 196, 198, 188 P. 2d 980.)

The question of wantonness has been before this court in many cases—usually in connection with the automobile guest statute (G. S. 1949, 8-122b), and we do not propose to indulge in any lengthy discussion of the subject. It is covered in the many cases cited in the annotations following the statute in G. S. 1949 and G. S. 1959 Supp. Generally speaking, it may be said that to constitute wantonness, the acts complained of must show not simply lack of due care, but that the actor must be deemed to have realized the imminence of injury to others from his acts and to have refrained from taking steps to prevent the injury because indifferent to whether it occurred or not. (*Frazier v. Cities Service Oil Co.,* above; *Baker v. Western Cas. & Surety Co.,* 164 Kan. 376, syl. 5, 190 P. 2d 850; *Bailey v. Resner,* 168 Kan. 439, 442, 214 P. 2d 323, and *Long v. Foley,* 180 Kan. 83, 299 P. 2d 63.)

The many authorities cited and arguments advanced by plaintiff have been examined and considered. The basic facts of this case, as shown by plaintiff's evidence, have been related, and, without

further discussion, we hold that they do not make out a case of wantonness and that the demurrer to plaintiff's evidence was properly sustained.

The judgment is affirmed.