No. 43,557

HAROLD L. COPE, *Appellant,* v. THE KANSAS POWER & LIGHT COMPANY, *Appellee.*

(391 P. 2d 107)

Opinion filed April 11, 1964.

*Robert B. Wareheim* and *M. J. Carpenter,* of Topeka, argued the cause, and *George E. McCullough, W. L. Parker, Jr.,* and *Reginald LaBunker,* of Topeka, were with them on the briefs for appellant.

*Charles S. Fisher, Jr.,* of Topeka, argued the cause, and *O. B. Eidson, Phillip H. Lewis, James W. Porter, Peter F. Caldwell, William G. Haynes* and *Roscoe E. Long,* of Topeka, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action to recover damages for personal injuries sustained by the plaintiff who was burned by electric shock and severely and permanently injured on July 1, 1961, when he came in contact with the defendant's 7200-volt uninsulated trans-

mission line. The action was tried to a jury which answered special questions and returned a general verdict in favor of the defendant. The plaintiff has appealed.

The plaintiff's petition contained two causes of action. The factual allegations of the petition are not here set forth since the plaintiff's evidence which tended to support them is hereafter summarized. Reduced to an essential minimum, the first cause of action alleged that the defendant was careless and negligent in the following particulars: (1) constructing and maintaining its transmission line at a height below a safe height under the circumstances when it knew, or in the exercise of due care should have known, that construction work was being carried on in the immediate area; (2) failing to insulate its two electric wires for the protection of workmen and others in the area; (3) failing to inspect the area to determine the condition of its installation when it knew of the existence of construction work in close proximity; (4) failing to isolate, that is, raise or move the dangerous wires out of proximity to the work area when it knew that workmen were in daily use of the area; (5) failing to de-energize the dangerous wires; and (6) failing to warn construction workers and others lawfully in the area of the dangerous condition of the installation.

The plaintiff's second cause of action incorporated pertinent allegations of the first cause of action, and alleged the defendant committed extremely gross and wanton conduct by its failure to insulate, inspect, isolate or de-energize its installations, or warn those lawfully in the area of the extreme hazardousness and dangerousness involved in working in the area. Allegations of the very serious injuries and the dreadful permanent disfigurement sustained by plaintiff, the physical pain and mental anquish which he underwent and the period of his hospitalization will not be detailed. The prayer was that the plaintiff recover both actual and punitive damages.

Issues were formed by defendant's general denial and allegations of plaintiff's contributory negligence and wanton conduct in seven specific instances, and plaintiff's reply.

The trial commenced on January 7, 1963, and the evidence was completed on January 10, 1963. At the close of court on that day, a conference was held in chambers to discuss instructions and final amendments to the pleadings. Certain requested instructions of both parties were denied over their objections, and, as hereafter

noted, the trial court struck plaintiff's second cause of action concerning gross and wanton negligence. On the following morning, January 11, 1963, before court convened, another conference was held in chambers at which time the trial court announced that it was adding instruction No. 13 which it denied the evening before. The plaintiff strenuously objected to the giving of the instruction.

The case was submitted to the jury on that date and its general verdict and answers to special questions read:

"GENERAL VERDICT

"We the jury duly impaneled do find for the defendant.

"SPECIAL QUESTIONS

1. Do you find the defendant company guilty of any negligence which proximately caused the injuries of plaintiff?

"Answer: Yes.

"2. If your answer to Number 1 is in the affirmative, state of what such negligence consisted.

"Answer: Power line not high enough for construction work.

"3. Do you find that the plaintiff Cope was guilty of any negligence which was the proximate cause or a contributing proximate cause of his injuries?

"Answer: Yes.

"4. If your answer to the foregoing is in the affirmative, state of what such negligence consisted.

"Answer: Did not exercise ordinary care for his own safety in proximity to electricity."

The plaintiff's evidence is summarized: On the afternoon of his injury, July 1, 1961, plaintiff was an employee of the Reno Construction Company which had a contract with the State Highway Department to perform the necessary grading for the relocation of Highway K 213 north of Manhattan and a short distance west of Tuttle Creek Dam. At the point where the accident occurred, the highway ran in an easterly and westerly direction. Defendant's 7200-volt line ran across the highway generally in a northerly and southerly direction and the area immediately under the transmission line at the point where plaintiff was injured was a deep ravine. The installation was of relative long standing, and in April, 1961, the defendant, being advised of the proposed construction, attempted to provide additional clearance across the highway by changing the installation. The defendant's line pole immediately south of the proposed highway was not changed, but the 40-foot pole north of the proposed highway in the ravine was replaced with a 45-foot pole. The Southwestern Bell Telephone Company,

through arrangements with the defendant, attached its line to the defendant's pole some three feet below the defendant's lowest wire.

Plaintiff was a member of the rock crew of the construction company, which was made up of heavy construction workers such as truck drivers, bulldozer operators, crane operators and the like. To provide a roadbed for the highway in the area below defendant's line, the crew had to cut down high ground to the east of the line by the use of two Northwest 80-D shovels, and load the rock and dirt into large dump trucks known as Athey wagons. The rock and dirt was hauled and dumped into the ravine area and bulldozed level. The procedure was to raise the fill two feet at a time all the way across the ravine, and start the whole process over again. As the level of the fill rose, the power line came into closer proximity with the ground level.

About two weeks before plaintiff's accident, the proximity of the power line to the level of the fill which was then near completion, became a matter of concern to those in the area who worked under and around it. About a week before plaintiff's accident, and while he was driving an Athey wagon on the fill, he knocked down the telephone wire which was strung on defendant's poles. It was never actually necessary to drive the Athey wagons under the power line in full dump position since the dirt and rock was deposited on either side of the line and then leveled by bulldozers.

There was evidence that the state highway engineer for the project and the foreman of the construction company notified the defendant company regarding the imminent danger of the power line installation. The foreman testified he called defendant's Manhattan office to request that something be done about the power line; that he spoke to a female voice which assured him that the proper parties would be notified. The highway engineer testified he could not remember calling the company about this particular line but that it was his usual procedure in cases of this type to do so. The defendant's employees at the Manhattan office denied receiving any telephone call or notification of the offending power line by telephone.

The telephone company received a complaint about the lack of telephone service and its engineer and the defendant's field engineer visited the work area on June 29, 1961, two days before plaintiff's accident. At the time of that visit, two shovels were being operated east of the power line and Athey wagons were

being operated back and forth along the power line in a load position and bulldozers were leveling the dirt under the line. The purpose of the defendant field engineer's visit to the site was to observe the situation and determine what could be done in cooperation with the telephone company to raise the defendant's poles so that the telephone company could obtain the required 19 feet of clearance when replacing the knocked down telephone wire.

On July 1, 1961, it was necessary to move the shovels westward on the unfinished highway beyond the power line. As the first shovel neared the power line it became apparent that the line was too low to admit passage. The operator turned it around and began backing under the line. At that time the boom had been lowered to about the height of the gantry, although in ten or fifteen minutes time it could have been lowered to the height of the bucket, and the gantry could have been lowered in an hour or an hour and a half. However, the evidence was undisputed that in moving a shovel from one place to another on a job, the gantry was never lowered. There was evidence that had the gantry and the boom been lowered, it would have been a safer method to move the shovel under the line, but the evidence of the construction company employees was uncontradicted that the plaintiff had no responsibility to make adjustments in the shovels. Their testimony was likewise uncontradicted that the various classifications of employees were expected to pitch in and help on any job where they were needed.

Observing the difficulty the operator was having in backing the shovel, the plaintiff stopped his Athey wagon nearby and voluntarily approached the shovel. He asked the mechanic and oiler who was responsible for assisting the operator, if he intended to go up and poke the wires over the gantry. When the plaintiff received a negative reply, he told the mechanic and oiler, "I will do it." He picked up a piece of lath, broke it in two pieces, and climbed up the gantry of the shovel which is a steel structure affixed to the top of the cab and rising above it. After raising the wire with the pieces of lath, the plaintiff nodded to the operator who backed the gantry portion of the shovel under the wire. When it was apparent that the end of the boom of the shovel would not pass the wire, the plaintiff crawled through the cab and up to the end of the boom and balanced himself at that point with his feet

and knees; he raised the wires with the lath and nodded to the operator to back the shovel. As the shovel moved back, it went over a hump or mound of dirt, causing the front end to raise into the air. This raised the end of the boom a foot or so and the plaintiff lost his balance and control of the wire on the end of each lath, causing the power line to strike him on the back of the neck, burn him severely, and knock him to the ground.

At the point where the accident occurred, defendant's lower line measured approximately 19½ feet high. The height of an Athey wagon in dump position is approximately 20 feet. The height of the gantry on the shovel in question was 20 feet and nine inches from its top to the base of the track on the shovel.

There were no warning signs in the area concerning the voltage of the line, nor was any information or warning given the construction workers by the defendant's employees that the power line was in fact energized, or how much voltage it carried.

The plaintiff first contends that the trial court erred in removing the question of defendant's wanton conduct from the consideration of the jury. In concluding that the question should not be submitted, the court stated:

"In this state for practical purposes recklessness or wantonness puts the wrongdoer in the same class with a willful wrongdoer. Failure to exercise due care towards one discovering position of peril is not wantonness. In our case at hand I know of no solid evidence in this case that clearly shows that the Kansas Power and Light Company saw anybody in any position of peril. The lines were plainly visible to any human being with two eyes or even one eye. People walking under these lines every day, and every hour, hundreds of times in this state, and I don't think the fact situation that you want to construe as wantonness is anything more than ordinary negligence. You have an ordinary negligence case here on both sides, and you are trying to make it semi-criminal. . . . there is no wantonness in this case."

Considering language used by the trial court that "wantonness puts the wrongdoer in the same class with a willful wrongdoer," and that the plaintiff was "trying to make it [defendant's conduct] semi-criminal," it is evident the trial court misconceived the law of this state relating to gross and wanton conduct. The rule is too well settled to admit of modification or change, that in all actions to recover damages for negligence, where actual damages are recoverable, the plaintiff is entitled to recover exemplary damages if the negligence be so gross as to amount to wantonness. The term "wantonness" as here used does not necessarily mean malice, but a

reckless disregard of the rights of others. (*Telegraph Co. v. Lawson*, 66 Kan. 660, 72 Pac. 283.) In *Frazier v. Cities Service Oil Co.*, 159 Kan. 655, 157 P. 2d 822, in defining gross and wanton negligence, it was held:

"To constitute wantonness, the acts complained of must show not simply lack of due care, but that the actor must be deemed to have realized the imminence of injury to others from his acts and to have refrained from taking steps to prevent the injury because indifferent to whether it occurred or not. If the actor has reason to believe his act may injure another, and does it being indifferent to whether it does nor not, he is guilty of wanton conduct." (Syl. ¶ 5.)

Other cases to the same effect are: *Kniffen v. Hercules Powder Co.*, 164 Kan. 196, 206, 188 P. 2d 980; *Baker v. Western Cas. & Surety Co.*, 164 Kan. 376, 382, 190 P. 2d 850; *Bailey v. Resner*, 168 Kan. 439, 442, 214 P. 2d 323; *In re Estate of Wright*, 170 Kan. 600, 607, 228 P. 2d 911; *Fyne v. Emmett*, 171 Kan. 383, 386, 233 P. 2d 496; *In re Estate of Bisoni*, 171 Kan. 631, 635, 237 P. 2d 404; *MacDougall v. Walthall*, 174 Kan. 663, 667, 257 P. 2d 1107; *Clark v. Hildreth*, 179 Kan. 243, 246, 293 P. 2d 989; *Watkins v. Layton*, 182 Kan. 702, 708, 324 P. 2d 130; *Johnson, Administrator v. Huskey*, 186 Kan. 282, 285, 350 P. 2d 14; *Allman v. Bird*, 186 Kan. 802, 806, 353 P. 2d 216; *Horn v. Chicago, R. I. & Pac. Rld. Co.*, 187 Kan. 423, 427, 357 P. 2d 815, and *Kohler v. Kansas Power & Light Co.*, 192 Kan. 226, 229, 387 P. 2d 149.

From the beginning, it has been the rule that a high-voltage line is one of the most dangerous things known to man; that not only is the current deadly, but the ordinary person has no means of knowing whether any particular wire is carrying a deadly current or is harmless, and that distributors of electricity which erect and maintain electric power lines are under a duty to exercise the highest degree of care to protect the public from danger. (*Railway Co. v. Gilbert*, 70 Kan. 261, 78 Pac. 807; *Wade v. Electric Co.*, 94 Kan. 462, 465, 147 Pac. 63; *Snyder v. Light Co.*, 98 Kan. 157, 160, 165, 157 Pac. 442; *Worley v. Kansas Electric Power Co.*, 138 Kan. 69, 23 P. 2d 494; *Jackson v. Kansas Gas & Electric Co.*, 152 Kan. 90, 97, 102 P. 2d 1038.)

Despite the defendant's duty to exercise the highest degree of care to protect the plaintiff and others in the work area, and disregarding the reasons given by the trial court in striking the second cause of action, we are of the opinion plaintiff's evidence failed to

show that the defendant realized the imminence of injury to the plaintiff and others under the circumstances disclosed by the evidence, and that it refrained from taking steps to prevent the injury because of indifference to whether it occurred or not. More specifically, we think the plaintiff's evidence failed to disclose an indifferent attitude on the part of the defendant to prevent injury to the plaintiff.

In this connection we note the trial court instructed on all grounds of ordinary negligence alleged by plaintiff and the jury found the defendant negligent only with respect to ground (1) as alleged in the first cause of action—"Power line not high enough for construction work." The jury's finding of negligence on only ground (1) as alleged absolved the defendant of all other acts of negligence as alleged in grounds (2) through (6) of the first cause of action. It is further noted the specific grounds of gross and wanton conduct contained in the second cause of action are identical to the specific acts of ordinary negligence contained in grounds (2) through (6) in the first cause of action, that is, the allegation of gross and wanton conduct did not charge the defendant with maintaining the power line at too low a height.

The jury's answer to special questions absolved the defendant of all grounds of ordinary negligence which were also specified as grounds of gross and wanton conduct.

The basic facts of this case, as shown by plaintiff's evidence, have been set forth, and we are of the opinion they do not establish a case of wanton conduct on the part of the defendant, and no error was committed in refusing to submit issues of the second cause of action to the jury.

The plaintiff next contends that the trial court committed prejudicial error in giving instruction No. 13 which reads:

"You are instructed that a person to whom two courses of conduct are open is required to exercise ordinary care in choosing which course he will pursue. If, under the same or similar circumstances, an ordinarily prudent person would not have so chosen, one having a choice is negligent in pursuing a course which is dangerous rather than one which is safe, or even less dangerous. This is true, even though the course pursued is easier or more convenient, and even though the risk of injury involved is not so great but that an ordinarily prudent person would have incurred it had the safer course been unavailable."

The instruction was given pursuant to the request of the defendant and was taken from the instruction which appears in the opinion of

*Jones v. A., T. & S. F. Rly. Co.*, 148 Kan. 686, 695, 85 P. 2d 15. However, it is significant to note that the following portion of the instruction from which the trial court borrowed its language was omitted. ·

"*However, ordinary care in making a choice between courses of conduct is all that is required. While the existence of a safe or safer course is to be considered in determining whether ordinary care was exercised, ordinary care does not require that every act be done in the safest way, and regard is to be had to all the other surrounding circumstances.*" (Emphasis supplied.) (l. c. 695.)

Under the facts of this case, it is apparent that instruction No. 13 was given on the theory that if a safer method of moving the shovel under the line existed and the plaintiff took a less safe method and was injured, he was negligent *per se*. Instruction No. 13 so qualified the instruction dealing with plaintiff's duty to exercise ordinary care for his own safety as to render the latter instruction meaningless.

We cannot approve the giving of instruction No. 13—even had it been given in the same language as appears in the Jones case. In common-law actions of this type where the plaintiff seeks damages alleged to have resulted from defendant's negligence and the defendant has pleaded contributory negligence of the plaintiff, the question is whether, under all the circumstances, the plaintiff's conduct fell below the standard to which a reasonable man should have conformed for his own protection and to save himself from harm, and not in the selection of alternative means in accomplishing the task at hand. (*Schroeder v. Nelson,* 157, Kan. 320, 324, 325, 139 P. 2d 868). There is hardly a case involving personal injury where a plaintiff could not have avoided injury had he taken a different course. The question is, was the plaintiff's conduct the conduct of an ordinary prudent person under all the circumstances. Moreover, this court has not approved the instruction given in the Jones case. In that opinion, three justices dissenting, the majority of the court said: "That instruction became the law of this case, so far as the plaintiff was concerned, *since he made no complaint of it.*" (Emphasis supplied.) (l. c. 695.)

We disapprove the giving of instruction No. 13, but did the giving of that instruction mislead the jury and prejudice the rights of the plaintiff and prevent his getting a fair trial. We think not.

Among the instructions given the jury was instruction No. 14, which reads:

"An individual in the position of the plaintiff, although not necessarily bound to know the amount of electricity traveling through high-voltage lines, is required to exercise at least ordinary care for his own safety in proximity to electricity, and in all situations he is required to exercise the care that an ordinary prudent person would exercise under like circumstances and conditions. If he fails to do this, he is said to be negligent. If you find that the plaintiff was thus negligent, contributorily negligent in the case at hand, he cannot recover."

The jury, in answer to special question No. 4, found the plaintiff negligent on the ground that he "Did not exercise ordinary care for his own safety in proximity to electricity." The language of the jury's answer to special question No. 4 follows the language of instruction No. 14, and as observed, it has nothing to do with the "safe way rule" purported to be covered by instruction No. 13. The plaintiff made no objection to instruction No. 14 nor did he object to the jury's answer to special question No. 4. Assuming, *arguendo*, that instruction No. 13 was erroneous as heretofore concluded, the jury did not find the plaintiff guilty of negligence under the "safe way rule," and we do not believe it can be said that the giving of that instruction prejudiced the rights of the plaintiff.

The plaintiff lastly contends that the trial court erred in refusing to give certain requested instructions. One of the plaintiff's requested instructions pertained to the definition of "wantonness," and was based upon the case of *Frazier v. Cities Service Oil Co.,* supra. As previously indicated, we have concluded the trial court did not err in refusing to submit the issue of defendant's wanton conduct to the jury, and no error was committed in refusing to give the requested instruction.

Two other requested instructions pertained to contributory negligence and were based upon the cases of *Wainscott v. Carlson Construction Co.,* 179 Kan. 410, 295 P. 2d 649, and *Nave v. Hixenbaugh,* 180 Kan. 370, 304 P. 2d 482. The jury was fully instructed concerning plaintiff's duty to exercise ordinary care for his own safety and the care that an ordinary prudent person would exercise under like circumstances. After being so instructed, the jury returned a general verdict for the defendant and answered special question No. 4 finding contributory negligence on the part of the plaintiff for his failure to exercise ordinary care for his own safety in proximity to electricity. That answer was based upon instruction

No. 14 which was not objected to, and it cannot be said that it was prejudicial error to refuse to give the requested instructions.

This case was tried for several days to a jury, and after being instructed, it returned a finding of contributory negligence on the part of the plaintiff and a general verdict in favor of the defendant. The finding and verdict were approved by the trial court and the plaintiff has failed to make it affirmatively appear that prejudicial error occurred during the trial.

The judgment is affirmed.

WERTZ, J. (dissenting): In dissenting, I wish to set forth briefly my views wherein I differ with the majority opinion.

*First*, in this action plaintiff sought damages alleged to have resulted from defendant's negligence and gross and wanton conduct. Defendant pleaded contributory negligence on the part of the plaintiff. This is the kind of action in which each party is entitled to a trial by jury as a matter of right and it should not be converted into a trial by the court.

No useful purpose would be gained by setting forth a resumé of the evidence indicating gross and wanton conduct on the part of the defendant. The record is replete with evidence that the defendant was cognizant at all times of the operations about and under its high-voltage power line. Only three days before the accident complained of defendant's engineer was on and about the premises and observed the heavy machinery about and under its wires. Also there was evidence a telephone call had been made to the defendant company with reference to the close proximity of its line to the work being done.

The current carried in a power line is not only deadly, but the ordinary person has no means of knowing whether any particular wire is carrying a deadly current or is harmless. Wires charged with an electric current may be harmless, or they may be in the highest degree dangerous. The difference in this respect is not apparent to ordinary observation, and the public, therefore, while presumed to know that danger may be present, are not bound to know its degree in any particular case. The company, however, which uses such a dangerous agent, is bound not only to know the extent of the danger, but to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to its wires and liable to come accidentally or otherwise

in contact·with them. (*Henderson v. Kansas Power & Light Co.,* 184 Kan.·691, 339 P. 2d 702.)

Defendant interposed a demurrer to the plaintiff's evidence on the ground the evidence failed to show the defendant guilty of any act of gross and wanton conduct. The trial court at first overruled defendant's demurrer to plaintiff's evidence on gross and wanton conduct, but on the following day the court, apparently usurping the function of the jury by weighing the evidence, reversed its ruling and sustained the demurrer. In so doing I am of the opinion the trial court erred.

*Second,* both the plaintiff and defendant requested specific instructions. The defendant requested the court to give the instruction set out in the case of *Jones v. A., T. & S. F. Rly. Co.,* 148 Kan. 686, 695, 85 P. 2d 15, as quoted in the majority opinion. Absent the competent italicized portion of the requested instruction, which omission was not supplied by any other instruction given to the jury, the trial court in fact told the jury, in giving instruction No. 13, that if the plaintiff had two courses of conduct open, he was to exercise ordinary care in choosing which course to pursue, and if he pursued a course which was dangerous rather than one which was safe or even less dangerous he would be guilty of negligence. Certainly this instruction had its impact on the jury's findings Nos. 3 and 4, which found the plaintiff guilty of negligence in that he did not exercise ordinary care for his own safety.

I am in accord with the majority opinion that the instruction given had no application to the facts in the instant case. The question was not whether plaintiff could have done his work safely in some manner other than that in which he did do it, but whether under the facts and circumstances plaintiff used due care in the manner in which he did it. The question is, Was plaintiff's conduct that of an ordinary, reasonable man under the surrounding facts and circumstances? The uncontradicted testimony was that the plaintiff had no responsibility to make adjustments on the shovel. He was not the operator nor was he in charge of that equipment. There was not a scintilla of evidence that he had any authority either to operate or direct the movement of the shovel. Whether the plaintiff was negligent in the performance of the duty assigned to him must be determined in the light of the situation in which he was placed. If his act was such as a reasonably prudent man

would have done, it was not negligent, although some other course would have been absolutely safe.

In view of instruction No. 13 as given, the plaintiff requested the trial court to instruct the jury, in substance, that the fact plaintiff may have had some knowledge of the danger of lifting the wires with a stick did not constitute contributory negligence if in the exercise of reasonable care he did not have a full appreciation of the risk involved in doing the act, even though he did have a comprehension of some risk, and that where one exposes himself to a known danger and injury results, it is not in every instance he is denied recovery but only where under like circumstances an ordinarily prudent person would not subject himself to so obvious and imminent a danger.

Plaintiff, in making his request for the two instructions, invited the court's attention to *Wainscott v. Carlson Construction Co.,* 179 Kan. 410, 413, 295 P. 2d 649, and *Nave v. Hixenbaugh,* 180 Kan. 370, 377, 304 P. 2d 482, wherein this court stated:

"It is not in every instance where one exposes himself to a known danger and injury results that he is denied a right to recover, but only in that class of cases where the danger is so obvious and imminent that a person of ordinary prudence under like circumstances would not subject himself to it. Danger may lurk within every defective condition, and yet may not be of such character that men of ordinary prudence would hesitate to expose themselves thereto. The defect and danger therefrom must be such that knowledge, or imputed knowledge thereof, would cause an ordinarily prudent person to appreciate the risk therefrom. The principal is too well established to require a citation of authorities to support it, that mere knowledge of the danger of doing a certain act without a full appreciation of the risk involved is not sufficient to preclude a plaintiff from recovery, even though there may be added to the knowledge of danger a comprehension of some risk. Mere knowledge of the offending instrumentality does not constitute contributory negligence as a matter of law. . . ."

Plaintiff's two requested instructions are sustained by many decisions of this court. For a few of the most recent cases, in addition to those above cited, see *Shufelberger v. Worden,* 189 Kan. 379, 369 P. 2d 382; *Weaver v. Laundon,* 186 Kan. 551, 557, 558, 352 P. 2d 412; *Henderson v. Kansas Power & Light Co.,* 184 Kan. 691, 339 P. 2d 702; *Webster v. Kansas Power & Light Co.,* 182 Kan.' 626, 629, 323 P. 2d 643.

The court refused to give plaintiff's requested instructions or the substance thereof, although the record is replete with .evidence to justify the court's giving the requests in substance. A party is

entitled to have the trial court give an instruction to the jury which is essential to his theory of the case where there is sufficient evidence to support such theory. (*Natanson v. Kline*, 186 Kan. 393, 412, 350 P. 2d 1093; *Kreh v. Trinkle*, 185 Kan. 329, 343 P. 2d 213.) It is incumbent upon the trial court in the performance of his duty to instruct the jury on the law applicable to the theories of both parties to the action insofar as such theories are supported by competent evidence. To instruct on one litigant's theory of the case and refuse to instruct on the theory of the other litigant when supported by evidence constitutes prejudicial error.

Not only did the court err in giving the bobtailed instruction taken from the *Jones* case but under the evidence in the case erred in refusing to give in substance plaintiff's requested instructions which were supported both by the evidence and by the decisions of this court.

I cannot join in the view of the majority that the instruction given and the two refused did not constitute prejudicial error. I am of the opinion that where it appears probable a misdirection upon a vital matter has affected the verdict of the jury, there seems no course open but to order a new trial, although it cannot be said with absolute certainty that had proper instructions been given a different decision would have been reached. (*Triplett v. Feasel*, 105 Kan. 179, 182 Pac. 551; *Gigoux v. Henderson*, 107 Kan. 325, 190 Pac. 1092.)

In conclusion, I am of the opinion the trial court erred in sustaining defendant's demurrer to the plaintiff's evidence as to gross and wanton conduct and that it committed prejudicial error in giving instruction No. 13 and in refusing to give the substance of plaintiff's two requested instructions; and under the circumstances it cannot be said that substantial justice has been done, which means a fair trial to each of the parties, and the rule against reversals for immaterial error does not apply.

The judgment of the trial court should be reversed and a new trial ordered.

ROBB, J., concurs in the foregoing dissenting opinion.

FATZER, J., concurring in part and dissenting in part: I am in accord with the majority opinion that it was not error to refuse to submit the issue of the defendant's alleged gross and wanton conduct

to the jury.  Likewise, I am in accord with the disapproval of instruction No. 13.  However, I cannot agree that the giving of the instruction and the trial court's failure to give the two requested instructions pertaining to plaintiff's contributory negligence, did not result in prejudice to the plaintiff, hence, I join in the "*Second*" portion of Mr. Justice Wertz' dissenting opinion.